No. 26,565.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BARBER, *Appellant*, v. THE LAKE STATE BANK et al., *Appellees*.

SYLLABUS BY THE COURT.

1. BONDS—*Construction—Reference to Other Instruments.* A bond given by a bank to secure deposits of county funds referred to the contract made between the bank and the county commissioners and recited that the bond was given in consideration of that contract. *Held*, that the contract was a part of the terms of the bond the same as if recited in the bond.

2. BANKS AND BANKING—*Partially Secured Deposits—Application of Payments.* Deposits were made under the contract and bond described in the first paragraph of this syllabus during the full contract period of two years, at the expiration of which time there was $146,375.50 on deposit in the bank to the credit of the county. Thereafter the county treasurer continued to make deposits in the bank and checked on the account the same as previous to the expiration of two years, until $370,947.49 additional had been deposited;

Bonds, 9 C. J. p. 36 n. 93; 6 R. C. L. 857. Depositaries, 18 C. J. pp. 587 n. 82, 589 n. 23. Payment, 30 Cyc. pp. 1246 n. 63, 1247 n. 67.

and after deducting the checks paid, there remained due the county $90,-656.80 when the bank closed. There had been no application of payments made by either the bank or the county. *Held,* that payments made after the expiration of two years should be applied first on the deposits made after that time, and second on the deposits made previous to that time.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed June 12, 1926. Reversed.

*Charles B. Griffith,* attorney-general, *John G. Egan,* assistant attorney-general, *Riley W. MacGregor,* county attorney, *John W. Davis,* of Greensburg, *Samuel Griffin* and *W. E. York,* both of Medicine Lodge, for the appellant.

*Adrian S. Houck, A. L. Orr,* both of Medicine Lodge, *Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton, W. E. Stanley, Earle W. Evans* and *George C. Spradling,* all of Wichita, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The action is one for $90,656.80 on a bond given to the plaintiff to secure the deposit of county funds made by the plaintiff in the Lake State Bank. Judgment was rendered in favor of the defendant on the verdict of a jury, and the plaintiff appeals.

Minutes of the proceedings of the board of county commissioners of Barber county were introduced in evidence over the objection of the defendants. Minutes showing action taken on February 3, 1919, were as follows:

"Motion was made, seconded and carried that the offer of 4¼ per cent on daily balances for county money, submitted by the Lake State Bank be accepted for a term of two years."

The minutes also showed the following action taken on February 4, 1919:

"Moved, seconded and carried that Lake State Bank be designated as county depository for two years and bond submitted by them be accepted."

The bond given contained the following:

"The conditions of this obligation are such that: Whereas, The Lake State Bank above named has been duly designated as a county depository for said county of Barber by the board of county commissioners of said county of Barber, in regular session on February 3, 1919, under section 2788 of the General Statutes of Kansas, 1915.

"Now, in consideration of the contract of said county commissioners with said the Lake State Bank, and in consideration of the appointment of said the Lake State Bank as a county depository and of the depositing of funds of said county with said the Lake State Bank, the conditions of this bond is that if the said the Lake State Bank shall well and truly pay all checks properly drawn upon it, as such depository bank, and faithfully account for any and all

moneys so deposited with it, and all interest thereon upon daily balances, at four and one-fourth per cent (4¼) as agreed upon in the appointment of said the Lake State Bank, then this obligation shall be null and void, otherwise to remain in full force and effect.   Dated February 4, 1919.

| | |
|---|---:|
| "A. T. Groendycke | $50,000 |
| The Lake State Bank, by Dave Freemyer, president (seal); | |
| Clara Groendyke, asst. cashier | 10,000 |
| The Pioneer Cattle Loan Co., by Dave Freemyer, president, | 30,000 |
| Dave Freemyer, Dorothy V. Hargis | 30,000 |
| Fred Lake | 15,000 |
| M. M. Shigley | 30,000 |
| H. S. Buck | 10,000 |
| C. D. Hogard | 20,000 |
| H. Gilbert | 15,000 |
| C. F. Bucher | 40,000 |
| J. N. Tincher | 25,000 |
| Seward I. Field | 20,000 |
| J. H. Rea | 10,000 |
| H. D. Fair | 100,000 |
| H. W. Skinner | 500,000" |

Minutes of the proceedings of the board of county commissioners on April 4, 1921, were introduced in evidence over the objections of the defendants.   Those minutes were as follows:

"It is ordered that the Lake State Bank contract shall continue to January 10, 1922.   That the 1921 tax shall be deposited in the Home State Bank of Medicine Lodge, Kan., said bank to be general depository of Barber county, Kansas; the said depository shall retain approximately 25 per cent of the average deposits.   The said remaining money to be apportioned among the banks desiring to participate at the same rate of interest, which shall be 4¼ per cent.   Said contract to run four years.   This money is to be apportioned by the county treasurer according to the capital and surplus of said banks. The banks desiring to participate shall file with the board of county commissioners on or before October 1, 1921, a statement requesting a right to participate in the county funds, also a statement as to the manner in which their certain deposits are guaranteed."

On the trial it was admitted that—

"Commencing with February 4, 1919, the county treasurer made deposits of county funds coming into his hands in the Lake State Bank, beginning with the sum of $10,000 on February 5, 1919.   And that he made deposits of various other sums from time to time.   It is also agreed that the total deposits made by him of county money from February 4, 1919, down to and including February 4, 1921, was $865,754.25.   It is also agreed that during that period of time of two years mentioned, from February 4, 1919, down to and including February 4, 1921, the county treasurer withdrew from the Lake State Bank the sum of $719,378.75.   It is also agreed that at the close of business on February 4, 1921, there was on deposit to the credit of the county treasurer in the Lake State Bank the sum of $146,375.50.   It is further agreed that from February 4, 1921, until and including April 5, 1921, the county treasurer de-

posited in the Lake State Bank $13,856.22. It is also agreed that between February 4, 1921, down to and including April 5, 1921, the county treasurer withdrew from the Lake State Bank $24,919.43, and that at the close of business on April 5, 1921, the county treasurer had on deposit to his credit in the Lake State Bank of money belonging to Barber county, $135,312.29. Commencing April 5, 1921, and running down until the bank was closed the total deposits by the treasurer was $210,715.77, and after April 5, 1921, down to the date when the bank was closed the county treasurer withdrew from the bank the sum of $255,371.26. And it is further agreed between the parties that at the time of the closing of the Lake State Bank on November 18, 1921, there was a balance on hand in the bank to the credit of the county treasurer of money belonging to the county of $90,656.80."

1. One of the principal questions discussed is whether or not the bond given by the Lake State Bank continued after the expiration of two years until the failure of the bank. The bond was given in consideration of the contract between the county commissioners and the Lake State Bank. That contract was disclosed by the minutes of the board of county commissioners and was for two years from February 4, 1919.

In 9 C. J. 36 it is declared that—

"It may be stated generally that where a bond and another contract or instrument relate to and form one and the same transaction, or the bond refers to such other instrument or is conditioned for the performance of specific agreements set forth therein, such instrument with all its stipulations, limitations or restrictions becomes a part of the bond and the two should be read together and construed as a whole."

A number of cases are there cited to support the text. The defendants also cite and quote from a number of cases which declare the same principle. Following these authorities, but without quoting further from them, the court holds that the bond secured deposits made during the full period of two years beginning on February 4, 1919, but did not secure deposits made after that time.

2. The plaintiff in its specifications of error says that—

"The court erred in refusing to give to the jury the appellant's special instruction No. 1;

"The court erred in refusing to give to the jury the appellant's special instruction No. 2;

"The court erred in refusing to give to the jury the appellant's special instruction No. 3;

"The court erred in instructing the jury at all, except that it should have given to the jury each of appellant's special instructions Nos. 1, 2 and 3;

"The court erred in refusing to set aside the verdict of the jury and to render judgment for the appellant upon the pleadings and the evidence in the case; and

"The court erred in rendering judgment for the appellees in said action."

The instructions requested were as follows:

"I. The jury are instructed that under the law and the evidence in this case they should return their verdict in favor of the plaintiff and against the defendants, the Lake State Bank, R. C. Nance, as receiver of the Lake State Bank, A. T. Groendycke, Dave Freemyer, Dorothy V. Hargis, Fred Lake, H. S. Buck, C. D. Hogard, H. Gilbert, C. F. Bucher, J. N. Tincher, Kendall Field as administrator of the estate of Seward I. Field, deceased, J. H. Rea, H. D. Fair and H. W. Skinner. The amount of the verdict against each of said defendants should be as I have otherwise instructed you.

"II. If you should find a verdict for the plaintiff, then you will find in the verdict and against each of the several defendants in the amount set out as follows, after the name of each respectively, with interest at the rate of six per cent per annum on each of the said several sums respectively from November 18, 1921, to this date:

| | |
|---|---:|
| A. T. Groendycke | $50,000.00 |
| The Lake State Bank | 10,000.00 |
| Dave Freemyer | 90,656.00 |
| Dorothy V. Hargis | 30,000.00 |
| Fred Lake | 15,000.00 |
| H. S. Buck | 10,000.00 |
| C. D. Hogard | 20,000.00 |
| H. Gilbert | 15,000.00 |
| C. F. Bucher | 40,000.00 |
| J. N. Tincher | 25,000.00 |
| Kendall Field, as administrator of the estate of Seward I. Field, deceased | 20,000.00 |
| J. H. Rea | 10,000.00 |
| H. D. Fair | 90,656.00 |
| H. W. Skinner | 90,656.00 |

"III. If you find a verdict for the plaintiff, then you will find generally in its favor in the sum of $90,656.80 with interest at the rate of six per cent per annum from November 18, 1921, to this date, and the amounts of the verdicts against each of the several defendants should be as I elsewhere instruct you."

The admitted facts showed that on February 4, 1921, there was on deposit to the credit of the county treasurer in the Lake State Bank, $146,375.50; that thereafter, and until April 5, 1921, there was deposited an additional sum of $13,856.22, and there was withdrawn $24,919.43, leaving at that time a balance of $135,312.29; and that commencing on April 5, 1921, and continuing until the bank closed, there were additional deposits of $210,715.77. Out of this, checks were paid, until at the time the bank closed there remained on deposit, $90,656.80. These facts were admitted. It was not necessary to submit them to the jury. The consequences flowing from them were questions of law that should have been determined by the court. If they compelled judgment in favor of the plaintiff, judgment should have been so rendered. Nothing in the pleadings, admitted facts or evidence tended to show any ap-

plication of payments made on checks by the county treasurer on the funds in the Lake State Bank. The application of payments must be made as the law directs. In *State v. Guaranty Co.*, 81 Kan. 660, 106 Pac. 1040, in an action on a bond given by a bank to secure deposits made by the state treasurer, this court said:

"In running accounts where there are items of debit and credit, and there has been no appropriation of payments by the parties, the ordinary rule is that the first debit items are extinguished by the first credit items, but that is subject to the other rule that where a debtor owes debts, some secured and others unsecured, and neither debtor nor creditor has directed the application, the law will apply the payments on the unsecured debts." (Syl. ¶ 5.)

That rule was first declared in this state in *Shellabarger v. Binns*, 18 Kan. 345, where this court said:

"Where a debtor who owes to his creditor several distinct debts makes a payment to his creditor, the debtor may apply such payment to any one of such debts which he chooses. If he does not make the application, then the creditor may do so. If neither makes any such application, then the law will make the application in the manner which is most equitable; and in doing so, the law will generally apply the payment to the oldest debt, or to the earliest item of the same debt, or to a debt that is due in preference to one that is not due; and generally, where one debt is secured and the other is not, the law will apply the payment to the debt which is not secured." (Syl. ¶ 2.)

The rule was referred to in *Medical Co. v. Hamm*, 89 Kan. 138, 141, 130 Pac. 650. Under the rule declared in these cases, payments made by the bank after February 4, 1921, should have been applied on the unsecured deposits made after that date.

All matters urged by the defendants to avoid the consequences of this rule of law have been considered.

In *Barber County v. Bank Commissioner*, 113 Kan. 180, 213 Pac. 1054, it was held that the deposits here in controversy did not come within the bank guaranty law. Because the deposits did not come within the provisions of that law, the bond sued on is not invalid.

It is urged that by the conduct of the board of county commissioners on April 4, 1921, the county is estopped to maintain this action. There cannot be an estoppel to recover from the bondsmen what was due at the expiration of the period for which the bond was given. The board could not do anything to prevent it from recovering from the bondsmen what was then owing to the county by the bank.

It follows that the plaintiff was entitled to judgment on the admitted facts, and the instructions requested by the plaintiff should have been given.

The judgment is reversed, and the trial court is directed to render judgment in favor of the plaintiff for $90,656.80 and interest thereon.

BURCH and DAWSON, JJ., dissenting.