No. 26,565.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BARBER, *Appellant,* v. THE LAKE STATE BANK et al., *Appellees.*

SYLLABUS BY THE COURT.

1. PRINCIPAL AND SURETY—*Liability of Surety—Surety as Favorite of the Law.* The principle that "sureties are favorites of the law" cannot be carried to the extent of releasing sureties on a bond given by a bank to secure the deposit of county money so long as the principal on the bond is bound and nothing has been done to release the sureties.

2. SAME—*Duration of Bond.* The rule declared in *Barber County Comm'rs v. Lake State Bank,* 121 Kan. 223, 246 Pac. 524, adhered to.

3. SAME—*Default on Bond.* There was a default on the bond given by the Lake State Bank to secure the money deposited therein by the county treasurer of Barber county.

4. SAME—*Discharge of Sureties—New Arrangement for Deposits After Expiration of Bond.* The sureties on the bond mentioned in the third paragraph of this syllabus were not discharged by a new arrangement made by the county commissioners under which the county treasurer continued to deposit money in the Lake State Bank after the expiration of the bond nor by the failure of the county to require security for deposits made after that date.

---

Principal and Surety, 32 Cyc. pp. 58 n. 32, 74 n. 42, 138 n. 42, 172 n. 27, 196 n. 16, 224 n. 48.

5. SAME—*Rule Binding Principal Applicable to Surety.* The rule that binds the principal in such a bond as is mentioned in this syllabus so far as the application of payments is concerned also binds the sureties.

6. SAME—*Sureties on Bond Securing County Deposits—Statutory Liability.* Sureties on a bond given by a bank to secure the deposits of county money made by a county treasurer under the order of the board of county commissioners cannot limit their liability except in the manner prescribed by section 78-107 of the Revised Statutes.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion on rehearing filed January 8, 1927. (For original opinion of reversal, see 121 Kan. 223.) Former judgment adhered to.

*Charles B. Griffith,* attorney-general, *John G. Egan,* assistant attorney-general, *Riley MacGregor,* county attorney, *John W. Davis,* of Greensburg, *Samuel Griffin* and *W. E. York,* both of Medicine Lodge, for the appellant.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton, W. E. Stanley, Earle W. Evans, George C. Spradling,* all of Wichita, *Adrain S. Houck* and *A. L. Orr,* both of Medicine Lodge, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: An opinion in this action was filed June 12, 1926 (*Barber County Comm'rs v. Lake State Bank,* 121 Kan. 223, 246 Pac. 524). The judgment of the district court was there reversed, and the trial court was directed to render judgment in favor of the plaintiffs for $90,656.80 and interest thereon. A rehearing was granted, additional briefs have been filed, and the case has been reargued. It is not necessary to state any additional facts. They were correctly stated in the former opinion.

1. The defendants argue that "the signers of the bond were uncompensated sureties, favorites of the law, and the condition of their obligation should be strictly construed." This argument depends for its validity on the principle that sureties are favorites of the law. The law may favor sureties, but the law and public policy require them to pay to the county treasurer public money that he, at different times, has deposited in a bank for which they have become surety in order that the bank might receive the deposits. Sureties are bound by their contracts in the same manner and to the same extent as principals, except that under certain circumstances sureties may be released by the conduct of obligees. None of those circumstances exist in the present case.

2. The defendants urge that "the bond expired on February 4, 1921, was not continuous, but was given by the bank and accepted by

the board as a bond for a two-year period only." Although counsel for the plaintiff made an able argument on the first hearing that the bond was a continuing bond, the court in its former opinion agreed with the contention now made, and what was said on this subject in the former opinion is now adhered to.

3. The defendants urge that "there was no default on the part of the Lake State Bank on any condition of the bond when it expired and, therefore, no liability." The argument to support this contention depends on the fact that all checks drawn on the bank during the two years for which the bond was given were paid when presented, but of the amount received during that time there remained on deposit on February 4, 1921, the date of expiration of the bond, the sum of $146,375.50. On that date, the bondsmen were liable for that amount. Payments were afterward made until the amount on deposit was reduced to $90,656.80, the amount for which the action was brought. It was not shown that at any time from that date until the failure of the bank there was less than $90,656.80 on deposit. Unless the payments made after February 4, 1921, are applied to the deposits made before that date, there was a default on the part of the Lake State Bank in the payment of money, the conditions of the bond were violated, and the defendants are liable thereunder.

4. The defendants urge that "the sureties on this bond were discharged: (a) by extending the old contract and changing the conditions thereof, both without the sureties' consent, (b) by the negligence of the county in leaving its funds unsecured after April 5, 1921." There was no extension of time for the payment of the money that was on deposit on February 4, 1921. The money was not taken out of the bank, but there was no extension of time for its payment. The county should have taken security for the deposits made after that date, but the failure to do so did not release the sureties on the bond for the deposits previously made unless payments made after that time should have been applied to deposits made before that time.

5. The defendants argue that "all sums of money withdrawn from the Lake State Bank by Barber county after February 4, 1921, should be applied to the payment of deposits made prior to that time, since the rule of applying payments preferentially to unsecured debts will not be applied where the other claims are secured by personal guarantors or sureties who are favorites of the law."

Part of the argument to support this contention of the defendants is based on the principle that sureties are favorites of the law. They should not be favored to the extent of being released from liability on the contract which they signed and which has not been performed. The contract binds both principal and surety. To the extent that the principal is discharged, the surety is likewise discharged but no farther, except as has been stated. If application of payments had been made by the Lake State Bank, that application would have bound the sureties. If application had been made by the county treasurer, the sureties would have been bound thereby. When application is made by law, the sureties must abide by that application. Application of payment cannot be made one way so far as the principal is concerned and another way so far as the sureties are concerned.

6. The defendants urge that this court made a mistake in ordering judgment in favor of the plaintiffs. Attention is called to the following language contained in the bond which was not set out in the former opinion:

"Know all men by these presents, that the undersigned, the Lake State Bank, of Lake City, Barber county, Kansas, as principal, and the undersigned persons, whose names also appear hereunder and who sign as sureties, are held and firmly bound unto the county of Barber and state of Kansas in the sum of six hundred thousand and no/100 dollars ($600,000), to the payment of which said undersigned hereby bind themselves, severally, but not jointly, in the amounts set opposite their signatures, in the aggregate to be at least six hundred thousand and no/100 ($600,000) dollars, or such *pro rata* portion of said sum as the aggregate amounts qualified for shall call for in case of default under the terms and conditions of this bond."

That part of the language to which attention is directed is as follows:

"Undersigned hereby bind themselves, severally, but not jointly, in the amounts set opposite their signatures, in the aggregate to be at least six hundred thousand and no/100 ($600,000) dollars, or such *pro rata* portion of said sum as the aggregate amounts qualified for shall call for in case of default under the terms and conditions of this bond."

This is a new proposition; it was not presented on the former hearing. Section 19-530 of the Revised Statutes governing the deposits of county money in banks in part reads:

"Before making such deposits the said board shall take from said bank or banks a good and sufficient bond, in a sum double the largest approximate amount that may be on deposit at any one time, if a personal bond, or the

15—122 Kan.

bond of some surety company authorized to do business in the state of Kansas, in a sum aggregating the largest approximate amount which may be on deposit at any one time, conditioned that such deposit shall be promptly paid on the check or draft of the treasurer of said county; but in no case shall more than one-half of the amount of said bond be subscribed by the officers of said bank."

Section 78-107 of the Revised Statutes reads:

"That all persons who shall offer themselves as sureties on official bonds, whether the same be state, county, township or city bonds, may designate, opposite their signature to such bond, the amount for which they are willing to be bound; and in case of a forfeiture of the bond they shall not be liable for a greater amount than the sum so designated."

The "sum" mentioned in the quoted part of the bond refers to the $600,000. The statute requires a bond in double the largest amount that may be deposited at any one time. In the present case, that amount would be $300,000. The bond limits the liability of each surety to that proportion of the $300,000, if that were the total loss, which the amount named by him bears to the total amount of the bond, $600,000. Each surety would then be liable for only one-half of the amount for which he signed. This reduces the effective liability of the total bond to $300,000, one-half of what is required by law. Under this rule the larger the bond the less the liability of each surety for any particular loss. The statute does not contemplate any such situation. The limitation of liability sought to be thus imposed was neither authorized nor permitted by law. A long list of cases might be cited holding that under a bond required by statute, where the bond contains the conditions required by statute and stipulates for liability not required by statute, the additional liability may be rejected as surplusage and the part which conforms to the statute be held valid and binding. However, that is not the present case. Here, we have a limitation on the required liability. An extended note on "effect of insertion of unauthorized provisions in a bond required by statute" is found in L. R. A., 1917 B, pages 990 to 1019.

In *Southern Surety Co. v. Kinney*, 74 Ind. App. 205, one paragraph of the syllabus reads:

"The conditions imposed by provisions of the statutes concerning official bonds are parts of such a bond though not written therein, and which sureties are bound to know, and the latter are powerless to change the obligations assumed by inserting in the bond any restrictive provision."

In *United States Fidelity, etc., Co. v. Poetker,* 180 Ind. 255, 264, the court said:

"It has long been the rule in this state that when a bond is given in obedience to a command of the statute a construction shall be given it which binds the obligors to the performance of the conditions which the statute declares it shall contain even though the bond does not specifically so provide."

There the action was on the bond of a cashier given to the bank and was required by statute. The surety company attempted to limit its liability. The limitation on liability was disregarded, and the company was held liable.

*Adams v. Williams,* 97 Miss. 113, was an action on the bond of the treasurer of a levee board to recover interest on public money deposited in banks. The bond was signed by a surety company and contained the following:

"And it is further provided that the said surety shall not be liable to the obligee by reason of public moneys being now deposited, or hereafter placed or deposited with any bank depository or depositories; it being the true intent and purpose of this bond to indemnify said obligee from any loss by reason of the personal acts only of said principal to the extent of the penalty of this bond subject to the terms, covenants, and conditions thereof." (p. 135.)

The court said:

"But the bond had the proper condition, that said Williams 'should properly account for and dispose of the money coming into his hands for the Yazoo-Mississippi delta levee board and should faithfully perform all other duties devolving upon him as such treasurer.' " (p. 135.)

The restriction on liability was declared to be surplusage, and a demurrer to the bill of the plaintiffs was overruled.

In *United States Fidelity & Guaranty Co. v. McLaughlin,* 76 Neb. 310, part of the syllabus reads:

"A clause in the bond of a deputy county treasurer, which limits the right of action thereon, for default of the deputy treasurer, to such default as shall be discovered during the continuance of the bond or within six months thereafter, cannot be enforced."

There the bondsman was held liable.

One paragraph of the syllabus to *Trustees of Village of Bath v. McBride,* as reported in 142 N. Y. S. 1014, 1017, reads:

"Where the form of an official bond differs from that prescribed in the statute if founded upon a good consideration, the liability of the surety is measured by the provisions of the statute rather than the language of the obligation itself."

In *School Furniture Co. v. McGuire,* 46 W. Va. 328, a bond was given that the sheriff would "account for and pay over all money that shall come into his hands by virtue of his said office for school purposes for the year 1893, as provided in section 46 of chapter 45 of the code." There, the court said:

"Section 46, chapter 45, Code 1891, provides that the sheriff shall receive and disburse all school moneys for the various districts of his county, and requires the county court to require of him, in addition to his general bond, a special bond as to school moneys, and, in prescribing its penalty—merely in prescribing its penalty—directs that the penalty shall be 'equal to double the amount of school money which will probably come into his hands for school purposes during any one year of his term of office.'" (p. 330.)

The time limitation named in the bond was disregarded, and the bondsmen were held liable for other than the year named in the bond.

Any other limitation than that prescribed by section 78-107 of the Revised Statutes was not authorized by law. When the defendants signed the bond securing deposits made in the Lake State Bank, they rendered themselves liable under that bond for the amounts set opposite their names. Section 19-530 does not contemplate that sureties may limit their liability in any way other than prescribed by law (R. S. 78-107). The *pro rata* limitation which the sureties sought to place on their liability was not authorized by law and must be disregarded.

The former judgment of this court is adhered to.

Burch and Dawson, JJ., dissenting.

Mason, J., dissents from the sixth paragraph of the syllabus and the corresponding part of the opinion.