No. 26,565.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BARBER, *Appellant*, v. THE LAKE STATE BANK et al., *Appellees*.

OPINION GRANTING A REHEARING.

SYLLABUS BY THE COURT.

JUDGES—*Disqualification to Act on Appeal—Grounds—Prior Participation as Attorney-general.* An attorney-general who is elected to the supreme court is not disqualified to sit in an action commenced after he was elected to the supreme court, but which involves a principle of law and an issue of fact which were embraced in an action in which he as attorney-general took part and which was tried and determined before the second action was commenced.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion allowing a rehearing filed March 12, 1927. (For former opinion of reversal see 121 Kan. 223, and 122 Kan. 222.)

*Charles B. Griffith,* attorney-general, *John G. Egan,* assistant attorney-general, *Riley MacGregor,* county attorney, *John W. Davis,* of Greensburg, *Samuel Griffin* and *W. E. York,* both of Medicine Lodge, for the appellant.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton, W. E. Stanley, Earle W. Evans, George C. Spradling,* all of Wichita, *Adrian S. Houck* and *A. L. Orr,* both of Medicine Lodge, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: An opinion in this case was filed June 12, 1926 (*Barber County Comm'rs v. Lake State Bank,* 121 Kan. 223, 246 Pac. 524). Another opinion, one on rehearing, was filed January 28, 1927 (*Barber County Comm'rs v. Lake State Bank,* 122 Kan. 222, 252 Pac. 475). Another petition for rehearing has been filed, in

Evidence, 23 C. J. p. 59 n. 22. Judges, 33 C. J. pp. 989 n. 93, 998 n. 22, 999 n. 25, 1002 n. 16, 1003 n. 19, 32; 15 R. C. L. 535.

Barber County Comm'rs v. Lake State Bank.

which, among other things, it is urged that Justice Richard J. Hopkins should not take part in the determination of this case because, as attorney-general, he was interested in the matter in controversy.

The motion for rehearing discloses that on December 31, 1921, Richard J. Hopkins, as attorney-general, wrote to the county attorney of Barber county as follows:

"Information given to me is that the deposit of the county was protected by bond, but that there may be an effort on the part of certain bondsmen to evade their liability. These matters should of course have immediate and careful consideration.

"I wish you would make immediate and thorough investigation of this matter and advise me at the earliest possible moment what the situation may be."

The motion further discloses that on January 10, 1922, Richard J. Hopkins, as attorney-general, again wrote the county attorney of Barber county as follows:

"Replying to your letter of January 5, have to advise you that there was mistake in my letter to you on December 31. The letter should have read:

"'I am advised by the bank commissioner that this deposit of the county is not protected by the state guarantee fund.'

"Please proceed, therefore, to give me full information in regard to this matter at the earliest possible moment, as per my previous letter."

Yet another letter was written on February 8, 1922, by him as attorney-general, to the county attorney of Barber county as follows:

"Please give me full information relative to the Barber county deposit in the Lake State Bank. I have not heard from you since your letter of January 5."

That correspondence occurred before *Barber County v. Bank Commissioner*, 113 Kan. 180, was commenced. That was an original proceeding in mandamus to compel the bank commissioner to issue a certificate against the state bank guaranty fund for $90,656.80, being the amount of the deposit of Barber county in the Lake State Bank at the time of its failure in 1921. In the hearing and decision of that case Justice Hopkins did not sit.

On January 28, 1924, about one year after Richard J. Hopkins had ceased to be attorney-general and had become a justice of the supreme court, the present action was commenced to recover $90,-656.80 from the bondsmen on the bond given to the plaintiff by the Lake State Bank to secure the deposit of county funds in the bank, and was not commenced until after the case against the bank commissioner had terminated in failure.

Concerning the case against the bank commissioner, the motion for rehearing says:

"When suit was instituted in this court on behalf of the county to obtain certificates against the guaranty fund, the bank commissioner was defended by Attorney-general Richard J. Hopkins. (*Board of County Commissioners of Barber County v. F. H. Foster,* Kan. 24,354 [*Barber County v. Bank Commissioner,* 113 Kan. 180, 213 Pac. 1054.]) He filed an amended answer on behalf of the bank commissioner, setting up and alleging as one of the two principal defenses to the action that the bond here involved was valid, was in force and effect at the time the bank failed, and that the sureties were liable thereon for the amount of the deposit in the Lake State Bank on November 18, 1921, and that therefore the deposit was 'otherwise secured' within the meaning of the guaranty law. Two voluminous briefs were filed by Attorney-general Hopkins before the Hon. Charles L. Hunt, commissioner appointed by this court in that case. Justice Hopkins' name appears on both these briefs as attorney for defendant. In the first brief two principal points were discussed, one of which was that the deposit was 'otherwise secured' by virtue of the identical bond here involved. Substantially half of the brief in that case was devoted to pressing upon the commissioner the contention that this bond was in force on November 18, 1921, and the sureties thereon were bound thereby and liable. It was strenuously insisted by said counsel that nothing which the county commissioners had done had discharged that bond. In fact, every question presented in this suit by the board of county commissioners was urged and presented and insisted upon in that case by the said attorney for the bank commissioner . . .

"The supplemental brief presented to the commissioner by the then attorney for defendant, the Hon. Richard J. Hopkins, contains the following heading as its first and principal heading, to wit:

"'Sureties on the bond were bound at the time the bank closed, notwithstanding the reference in the bond to the "contract" between the commissioners and the bank, and the fact that the record of the board of February 4, 1919, recited "that the Lake State Bank be designated as the county depository for a term of two years."'"

In that action, Charles B. Griffith, the successor of Richard J. Hopkins as attorney-general, and John G. Egan, assistant attorney-general, represented the defendant, the bank commissioner, in this court when the cause was argued. An affidavit of one of the counsel for the defendant, the bank commissioner, states that Richard J. Hopkins did not take any part in the preparation or trial of that case. Other than by writing the letters quoted, it does not appear that he gave personal attention to this matter while attorney-general. Whether or not he gave the matter his personal attention is immaterial, inasmuch as all of the acts of the office of attorney-general during his term were performed in his name and he is responsible therefor.

Do the facts outlined disqualify Justice Hopkins from participating in the determination of this controversy?

Justices of the supreme court are selected from the lawyers of the state who have had experience in the practice of their profession. The busy lawyer in Kansas, in the course of ten or twenty years, will have examined many legal questions, given advice in which they were involved, and will have been employed as counsel in a number of cases which depended for their correct solution on the application of legal principles. Acting in such matters cannot disqualify a justice of the supreme court when the same questions or issues come before that court for review; rather, it is the knowledge and experience a lawyer gains by examination of such matters that qualifies him to perform the duties of a justice of the supreme court.

The court takes judicial notice of the fact that the attorney-general's office is a busy place and uses a number of lawyers, all of whom are constantly at work on legal questions that arise on matters of public concern in the state. If an attorney-general, afterward elected to the supreme court, is disqualified to sit in a case in which some legal question involved was passed on by him or his office as attorney-general, there will not be many cases before the supreme court in which he can take part, because a large part of the entire field of law will have been under examination and discussion at some time during his two consecutive terms of office as attorney-general.

Richard J. Hopkins in the case against the bank commissioner did what the law commanded him to do as attorney-general; he defended the bank guaranty fund from a claim against it which the court held to be invalid. He was not paid to advance the cause of a private litigant. He was paid a salary to perform a public duty. When that duty had been performed and his term of office had expired, his whole connection with the matter ended.

The defendants cite 33 C. J. 1003, and quote the following language:

"The fact that an attorney, consulted as such, charges no fee for his services does not alter the rule as to his disqualification to sit in the case. When once the relationship of client and attorney is established, it continues so as to disqualify the judge. The disqualification is not limited to cases actually pending at the time when services of counsel were invoked, but extends to another case between the same parties involving substantially the same facts and issues. Hence, it is immaterial that his connection with the

case has been severed and that his fee has been paid. It has been held that, although the judge was counsel in only a part of the matters involved, he should surrender jurisdiction of the entire controversy."

We quote from pages 1002-1003 of the same authority as follows:

"It is generally held that it is improper for a judge to sit in a case or cause pending before him in which he has been of counsel, and that on that ground he is privileged to retire from the bench. While in some jurisdictions it is held that a judge is disqualified by reason of having been of counsel, although there is no statute on the subject, in most jurisdictions it is held that, in the absence of statute, a judge is not disqualified by reason of having been of counsel in a case or cause pending before him, especially where he has taken no active part in the case or advised in regard to the questions involved therein."

In *In re Peyton,* 12 Kan. 398, 407, the court said:

"It will be admitted that at common law prejudice did not disqualify a judge."

In 33 C. J. 998 the following language is found:

"At common law a judge might properly, of his own will, retire from the case on the ground of his bias or prejudice, it being discretionary with him to do so. While there are dicta to the effect that at common law a judge may be disqualified on the ground of his bias or prejudice, it is generally held, in the absence of statutory provision, that bias or prejudice on the part of a judge, which is not based on interest, does not disqualify him. . . . The disqualification of a judge on the ground of bias or prejudice is not looked upon with favor, and its liability to abuse has induced rigid construction of statutes providing therefor, but it has been held that such provisions should be considered remedial and be liberally construed with a view to effect and promote justice."

It should be noted that neither the constitution nor the statutes of this state prescribe any disqualification for a justice of the supreme court, although the statutes do for judges of the district courts. (R. S. §§ 20-305, 77-201, subdiv. 28.)   The constitution of this state says:

"The supreme court shall consist of seven justices."   (Const. art. 3, sec. 2.)

Why seven justices? Why not six or eight justices? To prevent an equal division on the court. A majority is required by the constitution. The constitution, the statutes, and the public policy of this state contemplate that all of the justices of the supreme court, when not sitting in divisions, shall act in all cases before it. Neither the constitution, nor the statutes, nor the public policy of this state, contemplates that any justice of the supreme court shall be disqualified to act on account of the conditions that exist in the present action if his judgment is necessary in order to reach a conclusion.

In *Philadelphia v. Fox*, 64 Pa. St. 169, 185, the court said:

"The true rule unquestionably is that wherever it becomes necessary for a judge to sit, even where he has an interest—where no provision is made for calling another in, or where no one else can take his place—it is his duty to hear and decide, however disagreeable it may be."

To the same effect is *Galey v. Board, etc.*, 174 Ind. 181; *Matter of Ryers et al.*, 72 N. Y. 1, 10-15; *State, ex rel. Null, v. Polley*, 34 S. D. 565; *McCoy v. Handlin, State Auditor*, 35 S. D. 487; *Stafford v. County Court*, 58 W. Va. 88, 93; *State, ex rel. Cook, v. Houser*, 122 Wis. 534, 573.

Justice Hopkins is not disqualified to act as a member of the court in this case. He might, with propriety, decline to sit, until it becomes necessary for him to act in order that the court may reach a conclusion. Under the circumstances that now exist, it is necessary for him to take his share of the burden that is on the court.

When the present action was first argued in this court, Justice Hopkins retired from the bench and did not hear the argument; he did not take any part in the deliberations of the court, nor take any part in the decision, although, by some mistake, the opinion failed to record him as not sitting. When the case came up on rehearing, Justice Hopkins retired from the bench and did not hear the argument; again he did not take part in the deliberations of the court until there occurred an equal division of the remaining members of the court, when, on the request of the writer of this opinion, Justice Hopkins gave his judgment on the matters then in controversy.

He has not heard any of the oral arguments; he has not deliberated with the court. He should hear oral argument, if either of the parties now desire it. For these reasons, a rehearing of the entire cause and of all the matters involved in it before this court is granted.

HOPKINS, J., did not participate in the discussion of any of these questions, nor take any part in reaching the conclusion herein declared.

DAWSON, J., concurs in the ruling that Mr. Justice Hopkins is not disqualified to sit in this case and to join in the court's deliberations in reaching a decision thereon and to participate in such decision; but he dissents from the rule of law stated in the syllabus and from so much of the court's opinion as pertains thereto.