COUNTY OF MUSKEGON *v.* MICHIGAN SURETY CO.

1. MUNICIPAL CORPORATIONS—COUNTIES—DEPOSITORY BONDS—EVIDENCE—SUFFICIENCY.

In action by county on depository bond, evidence *held,* sufficient to show amount due plaintiff at time bank closed.

2. SAME—REQUIREMENT OF NOTICE OF DEFAULT SURPLUSAGE.

Requirement in depository bond given to county pursuant to statute, that, in order to hold surety liable, timely notice of default must be given, being in conflict with statutory mandate that bond be conditioned for safekeeping and repayment of moneys deposited, is mere surplusage.

3. SAME—MONEYS PROTECTED BY DEPOSITORY BOND.

Moneys collected by county treasurer and deposited in bank are protected by depository bond, although they belong to other governmental agencies and must eventually be paid over to them (1 Comp. Laws 1929, §§ 1193–1202).

4. SAME—DEPOSITORY BONDS—TERMS OF STATUTE READ INTO BOND.

Under statute authorizing designation of depositories for all public moneys received by county treasurers, and requiring surety bonds to be given by such depositories, terms of statute must be read into bond (1 Comp. Laws 1929, §§ 1193–1202).

5. SAME—CANCELLATION OF DEPOSITORY BOND.

Where depository bonds given to county provided for cancellation, and notice of cancellation pursuant thereto was given, board of supervisors accepted cancellation, marked . bonds "canceled," and demanded and received government bonds as security in lieu thereof, there was legal cancellation (1 Comp. Laws 1929, §§ 1193–1202).

Appeal from Muskegon; Vanderwerp (John), J. Submitted January 5, 1933. (Docket No. 28, Calendar No. 36,885.) Decided June 29, 1933.

Assumpsit by County of Muskegon against Michigan Surety Company on a depository bond. Judgment for plaintiff. Defendant appeals. Affirmed.

*George H. Cross,* for plaintiff.

*Shields, Silsbee, Ballard & Jennings,* for defendant.

BUTZEL, J. County of Muskegon, plaintiff, brought suit against the Michigan Surety Company, defendant, upon a depository bond of $20,000. On October 22, 1930, the board of supervisors of the county designated the Peoples State Bank for Savings of Muskegon, Michigan, as depository for the funds of the county of Muskegon for the years 1931 and 1932, the bank agreeing to furnish a surety bond in the amount of $300,000 to secure deposits made by the county. The bank was unable to furnish such bonds, and, on January 20, 1931, a redesignation was made, whereby the National Lumbermen's Bank of Muskegon and the Peoples State Bank for Savings were both designated as county depositories, each to receive approximately 50 per cent. of the county funds and each to furnish a surety bond in the amount of $150,000.

The Peoples State Bank for Savings furnished bonds as follows: Michigan Surety Company for $20,000, dated December 30, 1930; Fidelity & Deposit Company of Maryland for $25,000, dated December 29, 1930; Century Indemnity Company for $10,000, dated January 17, 1931; Ætna Casualty & Surety Company for $15,000, dated December 29, 1930; Hartford Accident & Indemnity Company for $55,000, dated December 29, 1930; and Metropolitan Casualty & Insurance Company of New York in the

amount of $25,000, which, according to stipulation
filed, was in full force and effect on October 2, 1931.
The terms of this latter bond are not set forth in the
record. All of the other bonds contained provisions
similar to the following clauses in the Michigan
Surety Company bond:

"4. The surety shall not be liable for a greater
proportion of the amount on deposit at the time of
default hereunder, after deducting therefrom the
value of all collateral delivered by the principal to
or for the use of the obligee to secure such deposit,
than the amount of this bond bears to the aggregate
amount of all bonds, indemnity and collateral (other
than collateral delivered by the principal as afore-
said) held by the obligee at the time of such default
and liable therefor.

"7. This bond shall be deemed cancelled at the
close of business upon the effective date set forth in
a written notice served by the surety upon the
obligee or by the obligee upon the surety, or sent by
registered mail. Such date shall, in case of cancella-
tion by the surety, be not less than five days from
such service, or, if sent by registered mail, not less
than 10 days from the date borne by the sender's
registry receipt. In case of cancellation the un-
earned premium, if any, shall be returned upon de-
mand."

During the latter part of June, 1931, all of the
surety companies, with the exception of the Michi-
gan Surety Company and the Metropolitan Casualty
& Insurance Company of New York, sent notices of
cancellation, so that on July 1, 1931, only two bonds,
totaling $45,000, remained uncanceled. The Peoples
State Bank for Savings furnished a certificate of de-
posit for $55,000, which the county accepted as a sub-
stitute for a canceled surety bond of like amount.

The certificate of deposit was later surrendered, and $105,000 of government bonds accepted in substitution for the certificate of deposit of $55,000 and other canceled surety bonds aggregating $50,000. The Bankers Trust Company of Muskegon was appointed trustee to hold these government bonds, which equaled in amount and were accepted in lieu of all the bonds that had been canceled. It is claimed that the bonds were not properly canceled, but the exhibits filed show beyond any question that the cancellations became effective when the board of supervisors accepted them, marked "canceled" across the bonds, and demanded and received government bonds as security in their places.

On October 2, 1931, the Peoples State Bank for Savings failed to open for business. The records of the bank show that at the close of business on October 1, 1931, it owed the county $211,708.63. According to the books of the county, its claim against the bank was only $156,603.78. This was due to the existence of a large number of outstanding checks which had not been presented for payment at the bank. Checks amounting to $1,099.48 had been issued within 48 hours prior to the closing of the bank, so that the total amount due, if the drawer's liability should be denied on all unpresented checks issued more than 48 hours prior to the closing of the bank, would be $157,703.26. Of this amount, however, the sum of $46,659.72 consisted of game warden funds, sums received for inheritance, mortgage, State, and delinquent taxes, and escheats, redemption, poor, unidentified dead estate, and State highway district funds. It is claimed that this entire sum belonged to the State of Michigan and not to the county. It is further claimed that delinquent tax funds belonging to townships, public schools, cities, and villages,

totaling $73,199.99, although deposited in the designated depository of the county as county funds, were in fact funds of the State or other governmental divisions and were not covered, therefore, by the terms of the bonds of the defendant surety, protecting "funds of Muskegon county, Michigan." If, however, all of these funds were protected by the bond, the $105,000 of government bonds, plus the $20,000 bond of defendant surety and the $25,000 bond of the Metropolitan Casualty & Insurance Company are insufficient to pay the balance due, even after deducting the total checks outstanding over 48 hours prior to the time the bank closed. Suit was brought against the Michigan Surety Company on its $20,000 bond, and judgment rendered in favor of the county for the full amount of the bond and interest. Numerous questions are raised on appeal.

It is claimed that there was no competent testimony to show the amount due from the bank. The county treasurer testified as to the amount on deposit at the time the Peoples State Bank closed by reading from a bank statement he had received. Even assuming that such testimony were mere hearsay, there still remains the perfectly competent testimony of the deputy treasurer, based upon a checking of her records.

It is contended that defendant was discharged from liability on the bond because timely notice of default was not served upon defendant in accordance with the terms of the bond. The requirement of notice conflicted with the statutory mandate that the bond be conditioned for the safekeeping and repayment of moneys deposited. The bond was a public bond and the provisions as to notice were surplusage. See *Township of Forest* v. *American Bonding Co.*, 187 Mich. 657. Although cancellation

and *pro rata* provisions may be described as consistent with the statute in that they affect the penalty rather than the conditions of the bond, it is clear that a requirement of notice adds a condition precedent to liability. No showing was made of any injury resulting to defendant from lack of notice. *Grinnell Realty Co.* v. *General Casualty & Surety Co.,* 253 Mich. 16.

Defendant further contends that, as surety on a county treasurer's depository bond protecting "funds of Muskegon county," it is not liable for any funds deposited in a county account which may belong to other political divisions of the government. While such funds collected by the county treasurer must eventually be turned over to other governmental agencies, nevertheless these moneys were originally payable to the county and became intermingled with the county's own funds, the county assuming responsibility as custodian. They are protected by depository bonds until paid over to the proper governmental agencies. The bond was given in accordance with Act No. 99, Pub. Acts 1909 (1 Comp. Laws 1929, §§ 1193–1202), which authorizes the designation of depositories for all public moneys received by county treasurers, and requires surety bonds to be given by such depositories. The terms of the statute must be read into the bond. See *Lawrence* v. *American Surety Co.,* 263 Mich. 586.

Defendant further claims that although the *pro rata* clause is a legal and proper provision, the cancellation clause must be read out of all of the bonds; that for this reason the canceled surety bonds, amounting to $105,000, are still in force; that under the *pro rata* clause, if the total amount of these bonds were added to the $105,000 of government bonds plus the two uncanceled bonds of $20,000 and

$25,000, respectively, defendant's *pro rata* share of the loss would be considerably less than the $20,000 face amount of its bond. There was a legal cancellation of the $105,000 of bonds. See *Lawrence* v. *American Surety Co., supra.* The *pro rata* clause, by its very terms, applied only to bonds held by the obligee at the time of the default. The only bonds and securities held by plaintiff at that time were the $105,000 of government bonds, the $20,000 bond of defendant, and the $25,000 bond of the Metropolitan Casualty & Insurance Company of New York, the aggregate of which is insufficient to pay plaintiff's loss.

The judgment is affirmed, with costs to plaintiff.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.