BUNKER, County Treasurer, v. UNITED STATES FIDELITY & GUARANTY CO.

SAME v. HOME INDEMNITY CO.

Nos. 1047, 1048.

Circuit Court of Appeals, Tenth Circuit.

Sept. 13, 1934.

Hamilton Gardner, of Salt Lake City, Utah (O. A. Tangren, of Delta, Utah, and Richard Pausch, on the brief), for appellant.

Sam D. Thurman and M. C. Faux, both of Salt Lake City, Utah (Irvine, Skeen & Thurman and S. R. Thurman, all of Salt Lake City, Utah, on the brief), for United States Fidelity & Guaranty Co.

G. A. Marr, of Salt Lake City, Utah (Cheney, Jensen & Marr, of Salt Lake City, Utah, on the brief), for Home Indemnity Co.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

These are two actions at law to recover on depository bonds. At the conclusion of the trial of the consolidated actions, the court directed verdicts for appellees. These appeals challenge the correctness of that ruling.

The State Bank of Millard, principal on the bonds, failed on February 1, 1932; appellant had $105,151.62 of county funds on deposit on that date. Prior to that date both of the bonds sued on had expired. Besides these two depository bonds, appellant had given an official bond, upon which the Metropolitan Casualty Insurance Company was surety. Action was brought in the state court by the county against appellant and the company on his official bond, and a settlement reached by which credit was given for government and municipal bonds in appellant's possession as security for the deposit, and a judgment taken (since paid) against appellant and his surety for all but $10,000 of the balance of the deposit; the county has the further agreement of the Metropolitan Casualty Insurance Company to pay this $10,000 and the costs of this litigation, if recovery is not had here. The county having thus recouped its loss, there is no occasion to probe into the argument, relied upon heavily by appellant, that a different construction must be put on statutes and contracts where the public interest is involved.

The bonds sued on are identical in form. Each is conditioned upon the payment "on legal demand made during the term of this bond, all moneys deposited pursuant to such designation, including any balance on deposit at the beginning of said term." Both provide that they shall be void at their expiration unless prior thereto the bank has suspended payment or failed to pay on legal demand; that they shall not cover deposits made after default; that written notice shall be given within ten days, and proof of loss furnished within sixty days, after default; that suit must be brought within twelve months after default.

The bank paid every check, draft, or order drawn upon the account during the terms of the bonds, and did not suspend payment until after the bonds expired. True, before the bonds expired, the officers of the bank told appellant that if he withdrew his deposit the bank might as well close its doors. No authority is cited to support the proposition that such conversation is a "legal demand" except where a bank had already suspended payment. But it is immaterial, for more money was deposited after such conversation than was in the bank when it closed; notice of default was not given until seventeen months after the bank closed, which was after the adjustment with the company on the official bond; no proofs of loss were ever furnished; suit was not brought within twelve months of the alleged default.

When the obligations assumed by appellees are checked against the facts, it must be apparent that there can be no recovery upon the bonds sued on. Provisions of bonds as to coverage and notice and proofs of loss and time for bringing suit are, unless prohibited by statute or so manifestly unreasonable as to defeat the principal obligation, valid and enforceable. Riddlesbarger v. Hartford Fire Ins. Co., 7 Wall. (74 U. S.) 392, 19 L. Ed. 257; Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L. Ed. 408; United States v. Fidelity & Deposit Co. of Maryland (C. C. A. 2) 224 F. 866; Kelley Contracting Co. v. United States F. & G. Co. (C. C. A. 3) 278 F. 345; Suzuki v. National Surety Co. (C. C. A. 2) 290 F. 942; Schilling v. Travelers' Ins. Co., 60 Utah, 341, 208 P. 496. Provisions

designed to enable the surety to make investigation of the facts and to recoup losses, while the time is ripe for such endeavor, are customary provisions, valid at common law. Appellant's counsel, with commendable candor, virtually concede this, for they close their argument on the statutes with the statement that the result of their interpretation "is to increase the obligation of the bank, and, consequently, of the surety, and make it broader, adding the obligation to 'well and truly keep' as well as to pay."

We come thus directly to the nub of the cases: Can the contractual obligation to pay on demand be broadened to include the very different and much heavier obligation "well and truly to keep"? One is an obligation to pay all orders drawn during the term of the bond; the other an obligation well and truly to keep all moneys on deposit during the term of the bond. Pritchard v. National Surety Company (C. C. A. 5) 2 F.(2d) 591. To get at this underlying question, we must brush by the question of whether a court of law is equipped to so rewrite a contract.

■ Appellant's argument is founded upon the proposition that where a statute prescribes the terms of a bond and where a surety undertakes to write a bond under that statute, it cannot by contract alter or impair the statutory obligation assumed.[1] There is no occasion now to undertake to stake out the boundaries of this doctrine; that would involve an interpretation of the statutes of each state to determine what provisions of the several bonds are consistent with the various legislative purposes, the underlying principle being, of course, that applicable statutes are impressed upon contracts with controlling force, and that no provision of the bond inconsistent with the statute is enforceable. Sanderson v. Postal Life Ins. Co. (C. C. A. 10) 72 F.(2d) 894. For in the cases at bar, the Legislature has not prescribed the obligation of the bond nor proscribed conditions upon that obligation. Appellant's cases fail, therefore, at the threshold.

■ Under the laws of Utah, a public officer and his official bondsman are liable for all public moneys which come into his hands and not accounted for. National Surety Co. v. Salt Lake County (C. C. A. 8) 5 F.(2d) 34. Section 4500, C. L. Utah, 1917, as amended by chapter 46, Laws Utah, 1929, sections 74-1-1 to 74-1-5, Rev. St. Utah, 1933, exonerates such officers and their bondsmen from liability for public moneys lost by the insolvency of depositories named, provided the conditions of the act are complied with. The act is in terms permissive and not mandatory. It provides that,

"Any public officer having public funds in his custody may deposit the same, or any part thereof, with any bank incorporated under the national banking act and doing business in this State, or with any bank or trust company incorporated under the laws of and engaged in business in this State; provided, that he require such depository to pay interest on all funds so deposited at a rate of not less than two per cent per annum, and that he take from such depository collateral security or a bond furnished by a surety company qualified to do business in this State."

---

[1] Counsel cite in support of this proposition Southern Surety Company v. Cochise County, 27 Ariz. 473, 233 P. 897; Washington County v. Stephens, 46 Idaho, 224, 267 P. 225; Southern Surety Co. v. Kinney, 74 Ind. App. 205, 127 N. E. 575; Leach v. Commercial Sav. Bank, 205 Iowa, 1154, 213 N. W. 517; Davis v. West Louisiana Bank, 155 La. 245, 99 So. 207; Muskegon County v. Michigan Surety Co., 264 Mich. 65, 249 N. W. 454; Forest Tp. v. American Bonding Co., 187 Mich. 657, 154 N. W. 26; American Surety Co. v. Clarke, 94 Mont. 1, 20 P.(2d) 831; Western Casualty & Guaranty Ins. Co. v. Board of Com'rs of Muskogee County, 60 Okl. 140, 159 P. 655, L. R. A. 1917B, 977; Yeargain v. Board of Com'rs, 90 Okl. 38, 215 P. 619; American Surety Co. v. Tarbutton (Tex. Civ. App.) 248 S. W. 435; Farmers' State Bank v. Brazoria County (Tex. Civ. App.) 275 S. W. 1103. The Supreme Court of the United States has held that such decisions present no question of due process. Hartford Accident & Ind. Co. v. N. O. Nelson Mfg. Co., 291 U. S. 352, 54 S. Ct. 392, 78 L. Ed. 840. Appellees distinguish these cases on the ground that a statute in each state so holding declares void any provision not covered by statute, and cite, in opposition, United States. to Use of Zambetti v. American Fence Constr. Co. (D. C. N. Y.) 15 F.(2d) 449; United States, to Use of Stallings v. Starr (C. C. A. 4) 20 F.(2d) 803; Babock & Wilcox v. American Surety Co. (C. C. A. 8) 236 F. 340; United States v. Montgomery Heating & Vent. Co. (C. C. A. 5) 255 F. 683; United States v. Stewart (C. C. A. 8) 288 F. 187. In the absence of statutory prohibition, it is doubtful if customary and reasonable provisions as to notice, proofs of loss, cancellation, and the like, would alter or impair the obligation imposed by statute.

■ Provision is then made as to the kind of collateral acceptable, and that deposits so made shall not exceed prescribed percentages of the securities taken, and that the cost of official bonds shall be paid out of public funds. The statute does not require that moneys be deposited in banks or that surety bonds be taken; it simply relieves the official and his bondsman of liability when a bank fails if moneys are so deposited and the prescribed security taken. Cf. Pixton v. Perry, 72 Utah, 129, 269 P. 144; Millard County School Dist. v. State Bank, 80 Utah, 170, 14 P.(2d) 967. Since we are not here concerned with the question of whether appellant and his official bondsman are exonerated from liability to the county by a compliance with the statute, there seems to be no particular reason for inquiry into the question of whether the bonds here are such as are specified in the statute. If they are, and the other terms of the statute are complied with, then appellant and his official bondsman are not liable to the county; if not, they are. But that controversy has been satisfactorily adjusted between the parties thereto and is not before us.

Counsel on both sides, here and below, argue at length the question of whether these bonds comply with the statute. That is the question the court below, in a comprehensive oral opinion, decided. We agree with the trial court and will state our reasons therefor.

■ The statute provides merely that the public official may take from the depository "a bond furnished by a surety company qualified to do business in this State." Manifestly it must be a so-called "depository bond." The learned trial court, drawing upon his long experience in Utah and his wide knowledge of the decided cases, stated in his oral opinion that he must assume what all know to be a fact, that there were at least two types of depository bonds in common use when this act was passed, one to repay on legal demand, and one well and truly to keep. Lest there be doubt of the correctness of his assumption, he offered counsel an opportunity to establish the contrary, an offer which appellant's counsel respectfully declined. We, too, know from the law books that these different types of bonds have long been in common use.[2] The Legislature not having seen fit to designate the type of depository bond to be used, any form of such bond in common use, containing no unusual provisions contravening public policy, complies with the legislative mandate.

Appellant's argument to the contrary grows out of the circumstance that at the same session of the Legislature at which the act before us was amended, chapter 21, Laws 1923, dealing with the custody of state moneys was also amended. Chapter 57, Laws 1929, Rev. St. Utah 1933, §§ 23-0-2 to 23-0-4. We are told that the two amendatory acts were companion bills, in that one was Senate Bill 59 and one Senate Bill 60. Be that as it may, it is certain that the 1923 state money act was before the Legislature when the act before us was amended, for it reads on the 1923 act, word for word, in too many places to be charged to coincidence. Now the 1923 act provides specifically that depository bonds furnished by state officers must be conditioned upon the depository well and truly keeping state moneys as well as paying them out on demand. The bond therein prescribed is set out in full in the statute.

Appellant argues that with the state moneys act before it, requiring a bond well and truly to keep, it must be assumed the Legislature had that type of bond, and none other, in mind when the act before us was drawn. The most elemental rules of construction lead directly to the opposite conclusion. Cf. Cully v. Mitchell (C. C. A. 10) 37 F.(2d) 493, certiorari denied 281 U. S. 740, 50 S. Ct. 347, 74 L. Ed. 1154. When the act now in question was drawn, the Legislature embodied sentence after sentence of the 1923 act therein, verbatim et literatum. But when it came to prescribe the type of bond to be used, it deliberately dropped out the rigid requirements of the 1923 act and inserted, instead, the broad provision with which we are dealing. This cannot be charged to inadvertence. The Legislature may have believed that with a local official having an intimate knowledge of the condition of local banks, and with a personal liability upon him and his official bondsman, public moneys would be safe enough with a bond of narrower coverage than was necessary for widely scattered state funds. But whatever the reason, the Legislature so enacted, and that ends it. We have no power to write into this statute language which the Legislature deliberately left out. It is suggested that a repayment bond does not afford complete protection to the county; that is a problem for the Leg-

---

2 The particular type here involved was before the courts as early as 1916. Pacific County v. Illinois Surety Company (D. C. Wash.) 234 F. 97.

islature, although it may be noted that these bonds may not be canceled without notice sufficient to enable funds to be withdrawn, and that if succeeding treasurers kept similar bonds in force, continued protection would be afforded.

In support of his contention appellant cites one case which holds a bondsman for losses occurring after the expiration of the bond. Barber County Com'rs v. Lake State Bank, 121 Kan. 223, 246 P. 524; Id., 122 Kan. 222, 252 P. 475. The case is not in point, for the coverage of the bond is "faithfully to account" as well as to repay on demand. However, counsel on both sides overlooked the fact that on rehearing the first decision was reversed. Barber County Com'rs v. Lake State Bank, 123 Kan. 10, 254 P. 401; Id., 124 Kan. 372, 260 P. 630. That case therefore strongly supports the conclusion we have reached.

Concluding, as we do, that the bonds sued on comply with the statute, it is unnecessary to speculate as to the rights of appellant if they had not complied. The bank paid all checks, drafts and orders drawn upon it, and did not suspend payment, during the terms of the bonds. Even if the effort of the bank officials to keep up the balance in the account could be termed a default, which we do not hold, the bond excludes liability for deposits made after default, and more money was deposited after such claimed default than was on deposit when the bank failed. No notice was given, nor proofs of loss furnished, as required, and no legal excuse offered therefor. Suit was not brought within the stipulated time. There is no liability upon these bonds, and we need not go into the question of who is the real party in interest.

Judgments affirmed.