No. 35,143

THE STATE OF KANSAS, ex rel. A. B. MITCHELL (substituted) as Attorney General, etc., *Plaintiff*, v. THE SAGE STORES COMPANY and CAROLENE PRODUCTS COMPANY, *Defendants*.

(143 P. 2d 652)

December 11, 1943. ▮▮▮▮▮▮▮▮▮ Opinion on motion for rehearing filed (For original opinion see *ante*, p. 404.)

*C. Glenn Morris* and *Warden L. Noe*, both of Topeka, argued the cause, and *A. B. Mitchell*, attorney general, was on the briefs for the plaintiff.

*Tinkham Veale*, of Topeka, argued the cause for defendant Sage Stores Company; and *T. M. Lillard*, of Topeka, and *Boyle G. Clark*, of Columbia, Mo., argued the cause, and *Paul M. Peterson* and *W. L. Nelson, Jr.*, both of Columbia, Mo., were on the briefs for defendant Carolene Products Company; *Clark, Boggs, Peterson & Becker*, of Columbia, Mo., of counsel.

OPINION ON MOTION FOR REHEARING

The opinion of the court was delivered by

WEDELL, J.: This case is here on a motion for rehearing. It was an original action in quo warranto to oust The Sage Stores Company, a Kansas corporation, from doing a general merchandising business in this state but more particularly to prevent it from selling a filled-milk product made and distributed by the defendant Carolene Products Company on the ground its sale was prohibited by G. S. 1935, 65-707. Plaintiff, the state of Kansas, prevailed as a result of a four-to-three dicision.

The action was brought in the name of the state on the relation of Attorney General Jay S. Parker, who is now a justice of this court.

The first contention of defendants is that Mr. Justice Parker, who concurred in the majority view, was disqualified to participate in the decision and that his participation constituted a denial of due process of law in violation of the fourteenth amendment to the federal constitution.

At the outset we are confronted with plaintiff's contention that

defendants cannot now raise the question of disqualification for the reason that they waived any objection to Mr. Justice Parker's participation by failing to object to his sitting in the case when it was orally argued before this court and objected only after they discovered he had joined in the majority view against them. In that view defendants do not concur. They argue that when the justice retained his seat after the case was called for oral argument they assumed he was doing so as an interested spectator who desired to hear the arguments because it was an important case in which he had been the relator plaintiff and that it did not occur to them he would participate in the decision. The question of waiver is an interesting one, but we prefer to go directly to the merits of the contention on disqualification.

In answer to the motion for rehearing plaintiff has filed the affidavits of J. C. Mohler, secretary of the state board of agriculture, and of C. Glenn Morris and Warden L. Noe, special assistant attorneys general. Mr. Morris was chief counsel and directed the litigation with the assistance of Mr. Noe in both cases hereinafter mentioned. In the first case they represented the defendants, state officials, to be named presently. In the instant action they represented plaintiff, the state of Kansas. The affidavits contain a rather complete history of this and of the former case involving the same filled-milk statute. That history, among other things, discloses the parties to and the nature of the respective actions, the substance of the decision in the former action and the nature and character of the relation of Jay S. Parker, attorney general, to those cases.

There is no contention the affidavits do not constitute a substantially accurate statement of the facts pertaining to Attorney General Parker's relation to the respective cases. Pertinent portions of the affidavits in substance disclose the following facts:

The state board of agriculture and the state dairy commissioner are charged by law with the enforcement of the milk and dairy laws of this state. In 1938 one of the defendants in the instant quo warranto action, namely, Carolene Products Company, instituted a suit in the district court of Shawnee county to enjoin J. C. Mohler, secretary of the board of agriculture, and H. E. Dodge, dairy commissioner of the state, from enforcing this identical statute against a similar filled-milk product. The action was instituted while Clarence V. Beck was the attorney general of this state. That action had been tried in the district court and was pending on ap-

peal in this court when Jay S. Parker became attorney general in January, 1939. The case was decided in June, 1940. It was determined the statute was constitutional as a health measure although it prohibited the sale of a product assumed to be wholesome. (*Carolene Products Co. v. Mohler*, 152 Kan. 2, 102 P. 2d 1044.) Attorney General Parker had in nowise counseled or assisted in conducting that litigation. Mr. Morris, an assistant attorney general, handled that litigation.

Sometime after that decision counsel for Carolene Products Company advised Mr. Morris it had made some changes in the constituent elements of its product (for changes see opinion in instant case, *State, ex rel., v. Sage Stores Co.*, ante, p. 404, 141 P. 2d 655); that it had placed the new product with retailers in this state; if they were prosecuted for its sale under the statute, Carolene Products Company would defend the prosecutions and raise the constitutionality of the statute. The state board of agriculture and the state dairy commissioner wanted the statute enforced. They and Mr. Morris agreed an original action in quo warranto should be instituted in this court and they sought the permission of Attorney General Parker to file such an action in the name of the state on the relation of the attorney general. The permission was granted and they filed the instant action with the understanding the litigation should be conducted at the expense of the state board of agriculture. Attorney General Parker permitted them to file the action for the reason the enforcement of the statute was a matter of public concern and in order that any question which might arise in connection with its enforcement could be adjudicated in this court. In the conduct of the instant litigation which followed, Attorney General Parker in nowise personally or officially took any active part. He was not consulted concerning any issue of fact or law involved nor did he advise concerning the same. While his name was signed to pleadings by Mr. Morris, Attorney General Parker was only nominally or officially attorney for the state, the active attorney and general counsel for the state being Mr. Morris, who was assisted by Mr. Noe, attorney for the state board of agriculture. Shortly after the instant action was filed Mr. Morris resigned as assistant attorney general to enter the private practice. Mr. Morris was then employed by the state board of agriculture to continue to act as chief counsel in the case and that board agreed to pay for his professional services. He has been and is being paid by the

state through the state board of agriculture. Upon request of the state board of agriculture the attorney general appointed Mr. Morris a special assistant attorney general in order that he might have the proper legal status in the litigation.

From the foregoing uncontradicted facts it is clear Attorney General Parker did not give the facts nor the legal questions involved in the instant action his personal attention.

If prior to the filing of the instant action or during its pendency the attorney general entertained a personal opinion relative to the subject matter involved, it did not, under the facts presented, result from his active participation in either of the lawsuits mentioned. Manifestly any view he might have entertained as to the subject matter, which view was unrelated to his participation in the litigation, could not and did not disqualify him from serving as a justice of this court. (30 Am. Jur., Judges, §§ 74, 76, 83; *Barber County Comm'rs v. Lake State Bank*, 123 Kan. 10, 13, 254 Pac. 401.) If the rule were otherwise, probably few lawyers, if any, could qualify to serve in that capacity.

At any rate, one thing is obvious. It is that prior to the filing of the instant action and at the time the previously mentioned state officials asked permission to file this action in order that they might enforce the statute, the constitutional validity of the statute had already been established with respect to a filled-milk product assumed to be wholesome. (*Carolene Products Co. v. Mohler*, 152 Kan. 2, 102 P. 2d 1044.) Manifestly when the subject of the appropriate method or vehicle for the enforcement of the statute was being considered there was no need or occasion for the attorney general to form an independent and personal opinion relative to the constitutional validity of the statute. That issue, whether decided rightly or wrongly in the former case, had been settled. As attorney general he was bound by the decision. Thereafter the problem was one of enforcement. Quo warranto was an appropriate method of enforcement. The statute having been upheld as a public health measure, its enforcement became a matter of public concern and duty. As attorney general Mr. Parker was willing and consented to have the name of the state used by state officials charged with the duty of enforcing the statute.

Under the existing circumstances was Mr. Justice Parker disqualified from participating in this decision?

In 30 Am. Jur., Judges, sections 74 and 76, we find the following:

"At common law, bias or prejudice on the part of a judge, not the result of interest or relationship, is not supposed to exist, and generally it does not incapacitate or disqualify a judge to try a case, unless the Constitution or statute so provides.

"The words 'bias' and 'prejudice' as used in the law of the subject under consideration refer to the mental attitude or disposition of the judge toward a party to the litigation, and not to any views that he may entertain regarding the subject matter involved."

A judge is not disqualified because he is interested in the question to be decided where he has no direct and immediate interest in the judgment to be pronounced. In 30 Am. Jur., Judges, section 57, the rule pertaining to interest is stated thus:

"To work a disqualification, the interest must be a direct, certain, and immediate interest, and not one which is indirect, contingent, incidental, or remote." (See numerous decisions in footnotes.)

To the same effect are also *Evans v. Gore*, 253 U. S. 245, 64 L. Ed. 887; *Brinkley v. Hassig*, 83 F. 2d 351, 357. In the Evans case the question presented was the power of the federal government to tax the net income of a United States district judge, including his salary or compensation from the government. The federal constitution in effect provides the compensation of judges, both of the supreme and inferior courts, shall not be diminished during their continuance in office. It was the contention of plaintiff the taxing act was repugnant to the above constitutional limitation in that the tax by its necessary operation and effect diminished his compensation. The compensation of judges of the supreme court of the United States was, of course, indirectly affected by their decision. The court, however, held the question involved in the particular case was one which pertained to plaintiff's *own* compensation in which no other judge could have a *direct* personal interest and that there was no other appellate tribunal to which plaintiff under the law could go. While the members of that court, in view of their close relation to the question, expressed regret that the solution of the question should fall to them, it was determined the court could not decline or renounce jurisdiction of the case as plaintiff was entitled to invoke its jurisdiction on a question pertaining to *his own* compensation. The opinion in the Brinkley case, *supra*, which pertained to the revocation of Doctor Brinkley's license to practice medicine and surgery in this state, emphasizes the opinion in the Gore case. That opinion will receive our attention presently.

This court on two previous occasions has considered the subject of disqualification of one of its justices who was a former attorney general. In each case, as in this one, the constitutional right to a decision of this court would have been denied if the challenged justice had been held disqualified. (*Barber County Comm'rs v. Lake State Bank,* supra; *Aetna Ins. Co. v. Travis,* 124 Kan. 350, 259 Pac. 1068.) In the last cited case in which the attorney general, as in the instant case, had not actively participated in the case then before this court, it was *held:*

"A member of this court who was attorney general at the time an action was brought in the district court against the superintendent of insurance, which action was defended by assistants in the office of the attorney general, is not for that reason disqualified to sit on the hearing of the appeal of such case in this court." (Syl. ¶ 1.)

In the first cited case in which the justice, as attorney general, had taken no part in the preparation or trial of the case then before this court but had to some extent participated as attorney general in a former case, between some of the same parties, involving an issue germane to the case in which his qualifications were challenged it was *held:*

"An attorney general who is elected to the supreme court is not disqualified to sit in an action commenced after he was elected to the supreme court, but which involves a principle of law and an issue of fact which were embraced in an action in which he as attorney general took part and which was tried and determined before the second action was commenced." (Syl.)

In the course of the opinion in the Barber County Comm'rs case it was stated:

"The court takes judicial notice of the fact that the attorney general's office is a busy place and uses a number of lawyers, all of whom are constantly at work on legal questions that arise on matters of public concern in the state. If an attorney general, afterward elected to the supreme court, is disqualified to sit in a case in which some legal question involved was passed on *by him or his office as attorney general,* there will not be many cases before the supreme court in which he can take part, because a large part of the entire field of law will have been under examination and discussion at some time during his two consecutive terms of office as attorney general." (Emphasis supplied.) (p. 13.)

The opinions in our former cases reviewed the common law ruling of disqualification of judges. The basis of disqualification under that rule was a pecuniary interest. The opinions noted the fact that our legislature had undertaken to legislate upon the subject of disqualification of judges and that in so doing it provided that dis-

trict and probate judges were disqualified by reason of having been of counsel for one of the parties previous to becoming a judge of such a court and that where such disqualification existed, provision was made, in district court cases, for calling in another judge, or selecting a judge pro tem, to try the case and that a similar provision was made as to probate judges. The opinion in the Aetna Ins. Co. case, *supra*, stated:

"No provision of our constitution, or of our statute, prescribes conditions under which a member of this court is disqualified from sitting. Neither is there any provision of our constitution or statute for calling another judge to sit in lieu of one who may be disqualified. The framers of our constitution evidently took the view that any person who had the standing and qualifications to become a member of this court would not be presumed to be biased or prejudiced by reason of the fact that some time prior to becoming a member of the court he had been an attorney for one of the parties in the action, and our legislature obviously has consistently entertained the same view. Hence there is no legal disqualification of a member of this court to sit in a cause, unless it can be said to be the common-law reason for disqualification of one who had a pecuniary interest in the result of a cause. We need not decide in this case whether that would be a disqualification, for it is not contended by plaintiffs that Justice Hopkins, or any other member of this court, is disqualified for that reason." (p. 354.)

To the same effect is *Barber County Comm'rs v. Lake State Bank*, supra. There is no contention Mr. Justice Parker is disqualified under the common law rule of pecuniary interest. He is not disqualified by our constitution or statutory provisions.

There are occasions when a justice, although not legally disqualified, may prefer not to participate in a decision in order to avoid any possibility of suspicion of bias or prejudice. That attitude is commendable and this court has recognized and applied it frequently so long as it did not result in denying to a litigant his constitutional right to have the presented question adjudicated. In other words, preferences frequently serve a good and useful purpose but when they come in conflict with official duty, the former must yield. In *Barber County Comm'rs v. Lake State Bank*, supra, where the members of this court were equally divided without the participation of Mr. Justice Hopkins, formerly attorney general, the court concluded:

"Justice Hopkins is not disqualified to act as a member of the court in this case. He might, with propriety, decline to sit, until it becomes necessary for him to act in order that the court may reach a conclusion. Under the circumstances that now exist, it is necessary for him to take his share of the burden that is on the court." (p. 15.)

When the instant case came on for oral argument before this court all members thereof were present. No objection had been made to Mr. Justice Parker's participation in the case and he remained on the bench. When the case was reached for conference Mr. Justice Parker voluntarily expressed a preference not to participate in the conference or decision unless his official duties as a member of this court required him to do so. This request was freely granted. He remained in the conference but took no part therein until after it developed his vote was necessary for a decision. The court was of the opinion he was not disqualified to participate and that under the circumstances it was his duty to do so.

While our previous cases, as the instant one, pertain to participation of justices who were not legally disqualified, it is well established that actual disqualification of a member of a court of last resort will not excuse such member from performing his official duty if failure to do so would result in a denial of a litigant's constitutional right to have a question, properly presented to such court, adjudicated. (*Barber County Comm'rs v. Lake State Bank; Aetna Ins. Co. v. Travis; Brinkley v. Hassig;* omnia supra.)

The rule is based upon what judges and text writers frequently refer to as the Doctrine of Necessity. In the Barber County Comm'rs case we quoted the following statement from *Philadelphia v. Fox,* 64 Pa. 169, 185, with approval:

" 'The true rule unquestionably is that wherever it becomes necessary for a judge to sit, even where he has an interest—where no provision is made for calling another in, or where no one else can take his place—it is his duty to hear and decide, however disagreeable it may be.' "

See, also, other cases cited in our opinion.

In the Aetna Ins. Co. case we stated the principle thus:

"Since there is no method provided by our constitution or statute for having another person sit as judge of this court, if one or more members should be disqualified in a case, it necessarily follows that they must sit, when their views are necessary to a decision. There is no way in which questions may be decided in this court except by the decision of the members of the court. . . . This court is organized to decide cases. There is no substitute for it, or for any one of its members, in our scheme of government. Litigants are entitled to have the essential questions in their cases decided, and the members of this court cannot avoid the duty of deciding them (33 C. J. 989, and cases there cited), and certainly cannot do so for reasons that are legally insufficient." (p. 354.)

In the Brinkley case the rule was stated as follows:

"From the very necessity of the case has grown the rule that disqualification will not be permitted to destroy the only tribunal with power in the premises. If the law provides for a substitution of personnel on a board or court, or if another tribunal exists to which resort may be had, a disqualified member may not act. But where no such provision is made, the law cannot be nullified or the doors to justice barred because of prejudice or disqualification of a member of a court or an administrative tribunal. In *Evans v. Gore*, 253 U. S. 245, 40 S. Ct. 550, 64 L. Ed. 887, 11 A. L. R. 519, a question arose in which the members of the court had a direct personal financial interest. Adverting to this regretful circumstance, the court declined to renounce jurisdiction which appellant was entitled to invoke since 'there was no other appellate tribunal to which under the law he could go.' Cases have arisen where all the members of state supreme courts have been jointly sued by disappointed litigants; confronted with the choice of denying the suitor his right of appeal or hearing it themselves, the courts have heard the appeal. An exhaustive note gathering and analyzing the cases from twelve states and from England and Canada may be found in 39 A. L. R. 1476. Other authorities may be found in 42 L. R. A., n. s., 788, L. R. A. 1915E, p. 858, and in 33 C. J. 989, and 15 R. C. L. 541." (*Brinkley v. Hassig*, 83 F 2d 351, 357.)

In 15 R. C. L. 541 it is said:

"It is well established that the rule of disqualification of judges must yield to the demands of necessity, as, for example, in cases where, if applied, it would destroy the only tribunal in which relief could be had. The true rule unquestionably is that wherever it becomes necessary for a judge to sit, even where he has an interest, if no provision is made for calling another in, or where no one else can take his place, it is his duty to hear and decide, however disagreeable it may be. The rights of the other party require it. The same rule obtains in the English courts." (Sec. 29.)

To the same effect are the numerous cases cited under the treatment of the same subject in 30 Am. Jur., Judges, § 55.

Defendants argue the relation of the attorney general in the two Kansas cases previously mentioned is not comparable to his relation to the instant case. They contend his alleged disqualification in those cases arose merely out of the position he had taken while performing his statutory duty of defending actions instituted against state officials. They call attention to the fact the attorney general is not only authorized on his own motion to institute actions in quo warranto to revoke articles of incorporation of domestic corporations when they have abused their corporate powers (G. S. 1935, 60-1603) but that under the provisions of G. S. 1941 Supp. 17-4003 it is made the duty of the attorney general to institute such actions. They, therefore, contend it is within his discretion to determine

whether such an action shall be instituted and that he must necessarily give that matter his personal attention.

As an abstract proposition there is merit in some of these contentions. But let us examine them realistically with a view of determining the actual merit of the contention of disqualification as applied to the instant case.

We do not concur in the contention that there exists in principle a valid or substantial distinction between the previous assertion of a legal position in the defense of an action and the assertion of a previous legal position in the prosecution of an action insofar as the subject of disqualification is concerned.

We concur in the next contention that the attorney general is vested with discretion in determining whether he will institute or whether he will permit an action in quo warranto to be instituted for the purpose of determining whether the corporate powers, privileges or franchises of a domestic corporation have been abused. But realistically just what was the nature of the discretion which remained for the attorney general to exercise after our decision in *Carolene Products Co. v. Mohler,* supra, and how did the exercise of that discretion disqualify him to decide the controversy now before this court? As heretofore stated, after that decision the only subject upon which it was necessary for the attorney general to exercise discretion was the subject of the appropriate method of enforcing the statute and not whether the statute constituted a valid health measure which could be enforced. The controverted issue now before this court does not pertain at all to the subject on which the attorney general exercised his discretion, namely, whether quo warranto constituted an appropriate action for the enforcement of the statute. The controversy now is on the issue, or issues, which defendants have raised in that action and with respect to the determination of those issues, as previously indicated, Mr. Justice Parker was not disqualified.

Defendants argue if he is permitted to participate in this decision the plaintiff will be the judge of his own lawsuit. The contention is not sound. The sovereign power, the state, and not the attorney general, is the plaintiff. In quo warranto the state demands the writ from the court through the medium of its chief law officer requiring the respondent to show why it should not be shorn of its powers. In the proceedings the attorney general has no personal interest, direct or otherwise. His personal interest is not affected

directly or remotely by the judgment or decree. In such a proceeding he is supposed to be impartial and to seek only the vindication of the rights of the state. (*State, ex rel., v. Village of Kent,* 96 Minn. 255, 104 N. W. 948, 1 L. R. A., n. s., 826, and case note in 1. c.; *Commonwealth v. Walter,* 83 Pa. 105, 107; *State, ex rel., v. S. H. Kress & Co.,* 115 Fla. 189, 201-203, 155 So. 823.) He was not the plaintiff.

Defendants direct our attention to the case of *Tumey v. Ohio,* 273 U. S. 510, 71 L. Ed. 749. It is not in point. In that case the mayor of a village in the state of Ohio was declared disqualified to try a defendant for violation of the liquor laws. The first disqualification resulted from the receipt of substantial sums of money which he collected for himself as costs in case of conviction which gave him a direct pecuniary interest in the outcome of the trial. The second disqualification resulted from his official motive to convict.

The final contention of defendants is that failure of states to provide a judicial system which eliminates all suspicion of partiality renders its decisons invalid under the due process clause of the federal constitution and in support thereof cite *Norris v. Alabama,* 294 U. S. 587, 79 L. Ed. 1074; *Smith v. Texas,* 311 U. S. 128, 85 L. Ed. 84; *Hill v. Texas,* 316 U. S. 400, 86 L. Ed. 1559.

Manifestly the statement is too broad and the decisions cited do not support it. It readily will be conceded generally by both lawyers and judges that next to the importance of a just decision is the fact that the decision should be reached in such a manner as to avoid reasonable suspicion as to the fairness and integrity of the court that renders it. (*Tootle v. Berkley,* 60 Kan. 446, 56 Pac. 755; *State v. Johnson,* 61 Kan. 803, 60 Pac. 1068.) Certainly legislatures and courts have no higher duty to perform than that of safeguarding these fundamental concepts. With these concepts in mind we have set forth the reasons which in our opinion require the instant decision as applied to the conceded facts. In view of those facts we have no hesitancy in concluding Mr. Justice Parker was not disqualified, but with propriety refrained from participating in the decision until his official duties required him to do so. Having concluded he was not disqualified, there is, of course, no need for resting the instant decision on the well-established doctrine of necessity as applied to disqualified judges.

Other contentions made in the motion for rehearing with respect to the merits of the decision have been examined and considered. As

to these there is no change in the views of the respective members of the court and the motion is therefore denied.

Mr. Justice Parker did not participate in that part of the motion for rehearing which pertains to the subject of his qualification.