# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 28, 2010

Lyle W. Cayce
Clerk

No. 07-60756

NED COMER; BRENDA COMER; ERIC HAYGOOD, husband of Brenda Haygood; BRENDA HAYGOOD; LARRY HUNTER, husband of Sandra L Hunter; SANDRA L HUNTER; MITCHELL KISIELWESKI, husband of Johanna Kisielweski; JOHANNA KISIELWESKI; ELLIOTT ROUMAIN, husband of Rosemary Roumain; ROSEMARY ROUMAIN; JUDY OLSON; DAVID LAIN

Plaintiffs - Appellants

v.

MURPHY OIL USA; UNIVERSAL OIL PRODUCTS (UOP); SHELL OIL COMPANY; EXXONMOBIL CORP; AES CORP; ALLEGHENY ENERGY INC; ALLIANCE RESOURCE PARTNERS LP; ALPHA NATURAL RESOURCES INC; ARCH COAL INC; BP AMERICA PRODUCTION COMPANY; BP PRODUCTS NORTH AMERICA INC; CINERGY CORP; CONOCOPHILLIPS COMPANY; CONSOL ENERGY INC; THE DOW CHEMICAL COMPANY; DUKE ENERGY CORP; EON AG; E I DUPONT DE NEMOURS & CO; ENTERGY CORP; FIRSTENERGY CORP; FOUNDATION COAL HOLDINGS INC; FPL GROUP INC; HONEYWELL INTERNATIONAL INC; INTERNATIONAL COAL GROUP INC; MASSEY ENERGY CO; NATURAL RESOURCE PARTNERS LP; PEABODY ENERGY CORP; RELIANT ENERGY INC; TENNESSEE VALLEY AUTHORITY; WESTMORELAND COAL CO; XCEL ENERGY INC; CHEVRON USA INC; THE AMERICAN PETROLEUM INSTITUTE

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

No. 07-60756

Before JOLLY, Acting Chief Judge, and DAVIS, SMITH, STEWART, DENNIS, CLEMENT, PRADO, and OWEN, Circuit Judges.[*]

ORDER:

This case was voted en banc by a duly constituted quorum of the court consisting of nine members in regular active service who are not disqualified. Fed. R. App. P. 35(a); 28 U.S.C. § 46(d).

The grant of rehearing en banc in this case "vacate[d] the panel opinion and judgment of the court and stay[ed] the mandate." 5th Cir. R. 41.3.; see also Thompson v. Connick, 578 F.3d 293 (5th Cir. 2009) (en banc) (same).

After the en banc court was properly constituted, new circumstances arose that caused the disqualification and recusal of one of the nine judges, leaving only eight judges in regular active service, on a court of sixteen judges, who are not disqualified in this en banc case. Upon this recusal, this en banc court lost its quorum. Absent a quorum, no court is authorized to transact judicial business. See Nguyen v. United States, 539 U.S. 69, 82 n.14 (2003) (quoting Tobin v. Ramey, 206 F.2d 505, 507 (5th Cir. 1953)).

The absence of a quorum, however, does not preclude the internal authority of the body to state the facts as they exist in relation to that body, and to apply the established rules to those facts.

In arriving at our decision, directing the clerk to dismiss this appeal, this en banc court has considered and rejected each of the  following options:

> 1. <u>Asking the Chief Justice to appoint a judge from another Circuit pursuant to 28 U.S.C. § 291.</u> We have rejected this argument as precluded by our precedent, United States v. Nixon, 827 F.2d 1019 (5th Cir. 1987), and because § 291 provides an inappropriate procedure, unrelated to providing a quorum for the en banc court of a circuit.

---

[*] Chief Judge Jones and Judges King, Wiener, Garza, Benavides, Elrod, Southwick, and Haynes are recused.

2. <u>Declaring that there is a quorum under the provisions of Federal Rule of Appellate Procedure 35(a).</u> We believe that a quorum is properly defined under 28 U.S.C. § 46 as constituting a majority of the judges of the entire court who are in regular active service, and not as a body of the non-recused judges of the court, however few.

3. <u>Adopting the Rule of Necessity.</u> The Rule of Necessity—allowing disqualified judges to sit—is not applicable in this case because it would be inappropriate to disregard the disqualification of the judges of this Court when the appeal may be presented to the Supreme Court of the United States for decision. Moreover, there is no established rule providing that an en banc court lacking a quorum, may disregard recusals and disqualifications of all judges so that an en banc court may be formed. Nor is there any method to select one particular judge among the several disqualified judges in order to provide a bare minimum for a quorum.

4. <u>"Dis-enbancing" the case and ordering the panel opinion reinstated, and issuing the mandate thereon.</u> This case was properly voted en banc. The panel opinion and the judgment of the panel were lawfully vacated. Without a quorum to conduct any judicial business, this en banc court has no authority to rewrite the established rules of the Fifth Circuit for this one case and to order this case, properly voted en banc, "dis-enbanced." Moreover, we have no authority to interpret a plainly applicable rule as simply a blank, on grounds that "it was not designed to apply" to a situation where its terms have undisputed application.

5. <u>Holding the case in abeyance until the composition of the court changes.</u> It is purely speculative as to when the current vacancy on this court will be filled and it is, of course, unknown whether that judge may also be recused. Furthermore, we have no way of knowing when another sitting judge in regular active service of the Court may become "undisqualified" or indeed whether another judge of this en banc court may become disqualified to sit further. The Wright and Miller treatise has observed:

> Any decision of this character, however, should be made as promptly as possible; delay that spans several

> months and the addition of new judges, and that creates at least the appearance of a decision that could not have been reached earlier, should be avoided at all costs.

16AA WRIGHT & MILLER § 3981.3, at 448 (2008) (emphasis added).

In sum, a court without a quorum cannot conduct judicial business. This court has no quorum. This court declares that because it has no quorum it cannot conduct judicial business with respect to this appeal. This court, lacking a quorum, certainly has no authority to disregard or to rewrite the established rules of this court. There is no rule that gives this court authority to reinstate the panel opinion, which has been vacated. Consequently, there is no opinion or judgment in this case upon which any mandate may issue. 5TH CIR. R. 41.3.

Because neither this en banc court, nor the panel, can conduct further judicial business in this appeal, the Clerk is directed to dismiss the appeal.

The right of individual judges to write further after entry of this Order is preserved.

The parties, of course, now have the right to petition the Supreme Court of the United States.

This, the 28th day of May, 2010.

Judges Davis dissents with reasons, joined by Judge Stewart. Judge Dennis dissents with reasons.

W. EUGENE DAVIS, Circuit Judge, joined by CARL E. STEWART, Circuit Judge, Dissenting.

I dissent from the order dismissing this appeal for the following reasons.

As the order states, we do not have a quorum of the court to act in this case. By way of background, a panel of this court, after full consideration of the briefs and oral argument, decided appellant's appeal. Appellee then applied for en banc rehearing and a vote was taken. Only nine of the seventeen active judges were unrecused and qualified to participate in a vote. By 6 to 3, the nine qualified judges voted to grant rehearing en banc. Shortly after the case was voted en banc, one of the six judges voting for en banc declared herself recused thereby causing the court to lose its quorum. Instead of declaring that the loss of a quorum automatically dis-en banced the case causing the case to return to its status before it was voted en banc, five of the eight remaining unrecused judges voted to enter the attached order dismissing the appeal. The five judges who entered this order reasoned that this result was mandated by our Local Rule 41.3, which provides: "Unless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate."

1. Local Rule 41.3 was never designed to apply in this situation where the court, after voting a case en banc, loses its quorum and the en banc court never considers the appeal on its merits. It is a provisional, practical rule that alerts practitioners and courts of the fact that the panel opinion is not precedential pending consideration of the merits of the case by the en banc court.

It makes no sense to allow a vote to take a case en banc to dictate the result on the merits. Judges vote for en banc consideration for any number of reasons other than the fact that they conclude that the panel has reached an erroneous result. They may vote for en banc simply because they believe it

presents a serious question that the full court should consider or simply because they have some question about the correctness of the result. Judges are rarely prepared to definitively decide the merits of the case when they vote for or against en banc reconsideration.

2. Appellants in this case have a statutory right to appeal the adverse judgment of the district court to this court. The dismissal of this appeal based on a local rule has the effect of depriving appellants of their right to an appeal and allows the local rule to trump federal statutes.

3. Moreover, I find an inexplicable disconnect between the notion that a majority of the eight unrecused judges has no authority to do anything except literally apply our Local Rule 41.3 strictly as written; yet they do have the authority to dismiss the appeal.

4. Alternatively, 28 U.S.C. § 291 provides an avenue that would avoid depriving appellant of his direct appeal. Section 291 permits the Chief Justice to appoint a judge from another circuit to allow this court to have a quorum to consider the case en banc. 28 U.S.C. § 291 provides that: "(a) the Chief Justice of the United States may, in the public interest, designate and assign temporarily any circuit judge to act as circuit judge in another circuit upon request of the chief judge or circuit justice of such circuit." Acting Chief Judge E. Grady Jolly indicated his willingness to request the Chief Justice to designate such a temporary judge if a majority of the eight judges had requested it. We are aware that it would be an unusual request to appoint a judge from another circuit to constitute a quorum of the en banc court but we believe such a request is justified here where the alternative is the appellant must completely lose his right to a direct appeal.

6

DENNIS, Circuit Judge, dissenting:

I respectfully dissent from the decision by the majority of this en banc court to refuse to hear oral argument or to decide this appeal on its merits, but to take the shockingly unwarranted actions of ruling that the panel decision has been irrevocably vacated and dismissing the appeal without adjudicating its merits. The majority's decision to declare that we no longer have a quorum, and to take the drastic action of dismissing the appeal without hearing its merits, but with the intention of reinstating the district court's judgment, is manifestly contrary to law and Supreme Court precedents. The majority's action is deeply lamentable because it was forewarned of the reasons militating against its erroneous rush to judgment by the parties' letter briefs and by internal memoranda. If the five-judge en banc majority's precipitous summary dismissal of the appeal is not corrected, it will cause the sixteen–active judge body of this United States Court of Appeals to default on its absolute duty to hear and decide an appeal of right properly taken from a final district court judgment.

The majority's order mischaracterizes itself as merely stating the facts and "apply[ing] the established rules to those facts." In truth, however, the majority is making the fully informed choice to dismiss this unadjudicated appeal and finally terminate this litigation, even while turning a blind eye to several legally viable alternative courses of action and claiming to have no power to take any further action in the case due to the supposed lack of a quorum.[1]

---

[1] The language of the order of dismissal underscores the contradiction inherent in issuing such an order while simultaneously claiming to lack the power to take any action in this case. The order asserts the authority "to state the facts as they exist . . . and to apply the established rules to those facts." But United States circuit judges have no independent authority to apply law to facts and issue orders thereupon. We can issue orders only through a properly constituted quorum (with limited exceptions not relevant here, see Fed. R. App. P. 27(c)). A quorum is "the minimum number of members . . . who must be present for a deliberate assembly to legally transact business." Black's Law Dictionary (8th ed. 2004).

If we lack a quorum, then the group of judges who are purporting to issue the order of dismissal cannot issue such an order any more than a single circuit judge can dismiss a case on behalf of a three-judge panel.

The majority's decision to dismiss this appeal rests, first of all, on an implausible interpretation of the statute that defines a quorum of an en banc court of appeals, 28 U.S.C. § 46(c)-(d). Second, it contravenes the long-established rule that "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." New Orleans Public Service, Inc. v. Council of the City of New Orleans, 491 U.S. 350, 358 (1989). There are several affirmative grounds that authorize us to fulfill "the absolute duty of judges to hear and decide cases within their jurisdiction." United States v. Will, 449 U.S. 200, 215 (1980). These grounds are as follows: (1) we do have a quorum under the correct reading of § 46(c)-(d), which is also supported by Fed. R. App. P. 35(a); (2) the acting chief judge of this court has the authority to seek the designation and assignment of a judge from another circuit under 28 U.S.C. §§ 291 & 296; (3) we can follow the Supreme Court's example in North American Co. v. SEC, 320 U.S. 708 (1943), and hold the case over until the President and the Senate fill this court's current vacancy and give us nine out of seventeen active judges who can decide the case; and if all else fails, (4) we should comply with the ancient common-law doctrine known as the Rule of Necessity, which overrides the federal statute governing judicial recusals, as the Supreme Court held in Will, 449 U.S. at 217. The Rule of Necessity, and not dismissal, is the appropriate last resort in this situation because it fulfills this court's absolute duty to decide cases within its jurisdiction. The majority's action flouts that duty.

Last but not least, the dismissal of this appeal — with the apparent intention to effectively reinstate the district court's order dismissing the case, even though a panel of this court has already held that the district court erred,

---

I believe that we do have a quorum under 28 U.S.C. § 46 and must decide the appeal, but since the majority believes we lack a quorum, they contradict themselves by asserting that they have the power to dismiss the case.

585 F.3d 855 (5th Cir. 2009) — is contrary to common sense and fairness. Indeed, it is injudiciously mechanistic and arbitrary. For example, if the most recently recused judge had become recused three months earlier, the outcome of this case would have been precisely the opposite: the court could not have granted rehearing en banc (at least not while following the majority's current definition of an en banc quorum), so the panel's decision reversing the district court's dismissal of the case would have remained in effect. Thus, because of the majority's erroneous interpretation of 28 U.S.C. § 46(c)-(d) and its refusal to discharge this court's absolute duty to decide cases within its jurisdiction, the particular timing of one single judge's recusal is being allowed to conclusively determine the outcome of this case.[2]

## I. FACTS

The district court dismissed this case on the grounds that the plaintiffs lacked standing and that the case presented a nonjusticiable political question. The plaintiffs filed their notice of appeal in September 2007. The case was assigned to a three-judge panel of this court. Oral argument was held before a quorum of two judges because the third judge had a family emergency. One of the two remaining judges then recused himself, depriving the panel of a quorum. The case was then rescheduled for oral argument

---

[2] I agree with almost all of Judge Davis's dissent, including his well-considered view that if the en banc court lacks a quorum, then it is effectively dissolved and Fed. R. App. P. 41(d)(1) requires the panel's mandate to issue notwithstanding anything in our local rules to the contrary. The panel's decision is the most recent and authoritative decision concerning the issues raised in this appeal; that decision, not the district court's overruled decision, should control if the en banc court is unable to act.

Despite my agreement with Judge Davis, at some points in this opinion I will assume for the sake of argument that the panel's decision has been irrevocably vacated under 5th Cir. R. 41.3 and that its mandate cannot issue.

My only point of disagreement with Judge Davis concerns his view that the en banc court lacks a quorum. As I explain herein, that view is based on an erroneous reading of 28 U.S.C. § 46.

before a second three-judge panel. That panel issued its ruling in October 2009, reversing the district court's dismissal of the case. 585 F.3d 855 (5th Cir. 2009).

The defendants-appellees petitioned for rehearing en banc. The nine active circuit judges who were not recused at that time granted rehearing en banc by a vote of six to three. 598 F.3d 208 (5th Cir. 2010). Then, in April 2010, one of those nine judges became recused, leaving eight out of sixteen active judges still able to participate in the case, and forcing the eight nondisqualified judges to decide whether we still have a quorum and, if not, what is to be done. We asked the parties to submit letter briefs on the issue. Now, a majority of the nondisqualified judges — five out of eight — have voted to dismiss the case.

## II. ANALYSIS

A. This en banc court has a quorum as defined by 28 U.S.C. § 46.

The majority's reading of the statutory quorum requirement as requiring nine out of sixteen active judges for an en banc quorum is erroneous. 28 U.S.C. § 46(c) defines an en banc court as follows: "A court in banc shall consist of all circuit judges in regular active service," with certain exceptions that are not relevant here. The majority reads "all circuit judges in regular active service" as including judges who are disqualified from taking part in a particular case. But if it really meant that, then the statute would necessarily require all disqualified active judges to sit as part of the en banc court in every case that is heard or reheard en banc.[3] However, no one thinks that Congress wanted to require disqualified judges to sit in en banc cases, so

---

[3] This seemingly self-evident point is also made by the Advisory Committee Notes to the 2005 amendment to Fed. R. App. P. 35(a): "It is clear that 'all circuit judges in regular active service' in the second sentence [of § 46(c)] does not include disqualified judges, as disqualified judges clearly cannot participate in a case being heard or reheard en banc."

we do not read the statute that way. Instead, we routinely conduct en banc hearings and rehearings while excluding disqualified judges. Thus, our ordinary understanding of the category "all circuit judges in regular active service" excludes disqualified judges.

The statute goes on to define a quorum as "[a] majority of the number of judges authorized to constitute a court or panel thereof, as provided in paragraph (c)." Id. § 46(d). Thus, a quorum of an en banc court is a majority of "all circuit judges in regular active service," a category that has to exclude disqualified judges because the alternative would be absurd. Therefore, in this case, "all circuit judges in regular active service" under § 46(c) simply means the eight judges who are not disqualified, and a quorum is a majority of those judges.[4]

That has always been the most logical reading of the statute. The 2005 amendment to Fed. R. App. P. 35(a)[5] effectively did away with our circuit's former version of a local rule, 5th Cir. R. 35.6, which had followed a contrary reading.[6] After the 2005 amendment was passed, we did not adopt a rule (like those the First, Third, and Federal Circuits have adopted) defining a

---

[4] This reading of the statute does not render the quorum requirement meaningless; it only defines a quorum as a majority of the nondisqualified active judges. A majority of the qualified active judges still must be present in order for the court to conduct business. Thus, a quorum can be lost through circumstances other than disqualification, such as illnesses or family emergencies that may render judges temporarily unable to participate.

[5] The 2005 amendment clarified that only a majority of nondisqualified judges is needed in order to vote a case en banc. The history and reasons behind it are explained in the Advisory Committee Notes. The amended version of Rule 35(a) adopts a uniform national interpretation of § 46(c) and requires us to read the phrase "the circuit judges of the circuit who are in regular active service" in the first sentence of § 46(c) to exclude disqualified judges. Nonetheless, the majority in this case insists on reading the phrase "all circuit judges in regular active service" in the second sentence of § 46(c) to include disqualified judges.

[6] The pre-2005 version of 5th Cir. R. 35.6 said, "Judges in regular active service who are disqualified for any reason or who cannot participate in the decision of an en banc case nevertheless shall be counted as judges in regular active service."

11

quorum for conducting en banc court business as a majority of all active judges including disqualified judges.[7] Despite the absence of any such rule in this circuit, the majority is proceeding as if we actually had a local rule defining a quorum as a majority of all active judges including disqualified judges. Because we have no such rule, we must instead simply follow the statute itself, which requires only a majority of nondisqualified judges to constitute a quorum.

The majority's erroneous interpretation of § 46(c) is simply inconsistent with our routine practice of excluding disqualified judges from participating in rehearing en banc. We should accept that we have a quorum, as defined by § 46(c)-(d), and decide the case.

B. The dismissal of this case violates the rule that federal courts have an absolute duty to render decisions in cases over which they have jurisdiction.

1. The Absolute Duty to Decide Cases

The Supreme Court's "cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred. For example: 'We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution.'" New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 358 (1989) (quoting Cohens v. Virginia, 19 U.S. 264, 404 (1821)). There is a good reason

---

[7] See 1st Cir. R. 35.0(a); 3d Cir. I.O.P. 9.5.3; Fed. Cir. R. 47.11. Such local rules appear to be permitted by the final paragraph of the Advisory Committee Notes to the 2005 amendment to Rule 35(a), which states, "the amendment is not intended to foreclose the possibility that § 46(d) might be read to require that more than half of all circuit judges in regular active service be eligible to participate in order for the court to hear or rehear a case en banc."

why this rule has been in place for two centuries: society depends on the courts to resolve disputes in accordance with the laws.[8]  The political branches should be able to count on the federal courts to decide all the cases over which they have been given jurisdiction.[9]  This court has jurisdiction over this case because it is an appeal from a final order of a federal district court, in a suit between parties from different states, in which more than $75,000 is at stake.  See 28 U.S.C. §§ 1291, 1332.  The majority does not and cannot deny that this court has jurisdiction[10] — yet it chooses not to exercise that jurisdiction, in the face of two centuries of jurisprudence dating back to Chief Justice Marshall.[11]

---

[8] "Law . . . must resolve disputes finally and quickly."  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).  "The province of the court is, solely, to decide on the rights of individuals . . . ."  Marbury v. Madison, 5 U.S. 137, 170 (1803).  "The fundamental role of the courts is to resolve concrete and present disputes between parties."  Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 671 (9th Cir. 2005).

[9] "Only Congress may determine a lower federal court's subject-matter jurisdiction." Kontrick v. Ryan, 540 U.S. 443, 454 (2004).  "[T]he judicial power of the United States . . . is (except in enumerated instances, applicable exclusively to [the Supreme] Court) dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Congress, who possess the sole power of creating the tribunals (inferior to the Supreme Court) . . . and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good."  Ankenbrandt v. Richards, 504 U.S. 689, 698 (1992) (quoting Cary v. Curtis, 44 U.S. 236, 245 (1845)).

[10] See United States v. Will, 449 U.S. 200, 211 (1980) (explaining that the federal statute governing judicial recusals, 28 U.S.C. § 455, "does not affect the jurisdiction of a court").
     Because this appeal involves the standing and political question doctrines, one side argues that the federal courts ultimately do not have jurisdiction over this case.  Nonetheless, there is no doubt that the panel had jurisdiction and that we still have jurisdiction to decide this appeal, because "it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction."  United States v. Ruiz, 536 U.S. 622, 628 (2002).

[11] E.g., Marshall v. Marshall, 547 U.S. 293, 298-99 (2006) ("Chief Justice Marshall famously cautioned: 'It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should. . . . We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" (quoting Cohens, 19 U.S. at 404)); Pierson v. Ray, 386 U.S. 547, 554 (1967) ("It is a

13

Just as courts have an "absolute duty . . . to hear and decide cases within their jurisdiction," United States v. Will, 449 U.S. 200, 215 (1980), litigants have a corresponding due process right to have their cases decided when they are properly before the federal courts. "The parties to a civil action may appeal 'as a matter of right' under Fed. R. App. P. 3 from the final judgment of a district court to the circuit court of appeals except where direct review may be had in the Supreme Court." Matter of McLinn, 739 F.2d 1395, 1398 (9th Cir. 1984) (en banc). "The right of appeal is statutory, and the grant is subject to due process requirements." United States v. DeLeon, 444 F.3d 41, 58 (1st Cir. 2006) (citing Evitts v. Lucey, 469 U.S. 387, 393 (1985)). The right to appeal would be of little value if the courts of appeals were not required to render decisions in cases that are properly brought before them.

This court initially fulfilled its duty to decide this case when the panel rendered its decision in this appeal. 585 F.3d 855 (5th Cir. 2009). If the panel's decision had been allowed to take effect, then the court's duty would have been discharged.[12] But the court's decision to rehear the case en banc had the effect of vacating the panel's decision under Fifth Circuit Rule 41.3.[13]

---

judge's duty to decide all cases within his jurisdiction that are brought before him . . . ."); Kline v. Burke Const. Co., 260 U.S. 226, 234 (1922) ("[The plaintiff] had the undoubted right . . . to invoke the jurisdiction of the federal court and that court was bound to take the case and proceed to judgment."); Willcox v. Consol. Gas Co. of N.Y., 212 U.S. 19, 40 (1909) ("When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . ."); Chicot County v. Sherwood, 148 U.S. 529, 534 (1893) ("[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends." (quoting Hyde v. Stone, 61 U.S. 170, 175 (1857)).

[12] If the court had believed it could not grant rehearing en banc due to lack of a quorum, there would have been no violation of the court's duty or of the parties' rights because there is no statutory or constitutional right to rehearing en banc. See United States v. Nixon, 827 F.2d 1019, 1022 (5th Cir. 1987) (per curiam).

[13] I agree with Judge Davis's reading of Rule 41.3, under which the panel's decision should be treated as having been only provisionally vacated pending the outcome of rehearing en banc, and the panel's mandate should therefore issue pursuant to Fed. R. App. P. 41(d)(1)

Because the panel's decision has been vacated, the court is now back in the position it was in before the panel rendered its decision: it has an absolute duty to hear and decide the appeal. The only difference is that now the en banc court, rather than the panel, has control over the case and therefore has the duty to render a decision.

2. The Rule of Necessity

Assuming for the sake of argument that the en banc court lacks a quorum, and also assuming that all other possible means of carrying out this court's duty have been ruled out, this court's last resort should be to decide that the Rule of Necessity applies and, accordingly, ask the active circuit judges who have recused themselves from this case to consider setting aside their recusals in order to decide this appeal. The Supreme Court in United States v. Will explained the Rule of Necessity as follows: it is the "well-settled principle at common law that . . . 'although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may but must do so if the case cannot be heard otherwise.'" 449 U.S. at 213 (quoting Frederick Pollock, A First Book of Jurisprudence 270 (6th ed. 1929)). The Court held in Will that the Rule of Necessity overrides the federal statute providing for the disqualification of judges, 28 U.S.C. § 455. Id. at 217 ("We therefore hold that § 455 was not intended by Congress to alter the time-honored Rule of Necessity."). If there is no other way for this court to carry out its duty, then we are required to follow Will and recognize that the Rule of Necessity requires some or all of our fellow active circuit judges to set aside their recusals.

---

because of the dissolution of the en banc court.

Here, however, I nonetheless assume for the sake of argument that we should treat the panel's decision as having been vacated.

15

As the Court explained in Will, the Rule of Necessity arises directly from the rule that federal courts cannot decline to exercise their jurisdiction:

> Chief Justice Marshall's exposition in Cohens v. Virginia could well have been the explanation of the Rule of Necessity; he wrote that a court "must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot avoid them."

Id. at 216 n.19 (citation omitted) (quoting Cohens, 19 U.S. at 404). Moreover, the Rule goes back more than five centuries, id. at 213, and "has been consistently applied in this country in both state and federal courts," id. at 214.

The Rule of Necessity is often invoked when every judge, or all the judges of a particular court, would otherwise be disqualified. For example, Will involved a challenge to the validity of statutes that affected the salaries of all federal judges, see id. at 209-10, and the Second Circuit applied the Rule in Tapia-Ortiz v. Winter when a litigant had sued every judge in the circuit, 185 F.3d 8, 10 (2d Cir. 1999) (per curiam). But the Rule is not limited to such extreme cases; it also applies to situations in which even a single judge's disqualification would have the effect of preventing a properly brought case from being heard. This point is clearly established by the Supreme Court's opinion in Will and the cases quoted and cited therein.

For instance, the Will Court approvingly quoted the following passage from a Kansas Supreme Court case in which only one justice's disqualification was at issue:

> [I]t is well established that actual disqualification of a member of a court of last resort will not excuse such member from performing his official duty if failure to do so would result in a denial of a litigant's constitutional right to have a question, properly presented to such court, adjudicated.

Will, 449 U.S. at 214 (emphasis added) (quoting State ex rel. Mitchell v. Sage Stores Co., 143 P.2d 652, 656 (Kan. 1943)). The disqualification issue in Mitchell was that one justice had previously been involved in the case while serving as the state's attorney general.[14]

Will also gave the example of "Mooers v. White, 6 Johns. Ch. 360 (N.Y.1822), [in which] Chancellor Kent continued to sit despite his brother-in-law's being a party; New York law made no provision for a substitute chancellor. See In re Leefe, 2 Barb. Ch. 39 (N.Y.1846)." Will, 449 U.S. at 214 n.15. In addition, Will approvingly cited Moulton v. Byrd, in which the Alabama Supreme Court held that the Rule of Necessity compelled a justice of the peace who had previously acted as an attorney for the plaintiff not to recuse himself from deciding the case. 449 U.S. at 214 n.16 (citing Moulton v. Byrd, 140 So. 384 (Ala. 1932)). Each of these situations — a judge's previous involvement in a case as a government official, a judge being a party's brother-in-law, or a judge's previous service as a party's attorney — concerned the disqualification of a single judge, not of all judges. But the Supreme Court in Will held them all up as examples of the proper application of the Rule of Necessity, because each of them met the essential criterion for the Rule's applicability: "the case cannot be heard otherwise." Will, 449 U.S. at 213.

The Rule of Necessity is also not limited to courts of last resort. The cases cited in Will make that clear: neither Mooers nor Moulton, for instance,

---

[14] That justice preferred not to participate but had to do so, in compliance with the Rule of Necessity, because the court was unable to reach a decision without him. 143 P.2d at 656.

involved a judge of a court of last resort. This court has also invoked the Rule before, in Duplantier v. United States, 606 F.2d 654, 662-63 (5th Cir. 1979).[15]

Thus, under Will, the Rule of Necessity clearly applies to cases in which the court is deprived of a quorum by the recusals of some (rather than all) judges, and it applies even if the court is not a court of last resort. If the en banc court lacks a quorum in this case, and if we have no other way of making it possible to decide this appeal, then the bottom line is that this court is required to invoke the Rule of Necessity rather than dismissing the case.[16]

The only authority that anyone has offered in opposition to the Rule of Necessity is Chrysler Corp. v. United States, 314 U.S. 583 (1941) (mem.), in which five Justices of the Supreme Court dismissed a case on direct appeal[17] because they lacked a quorum of six Justices as required by statute. Chrysler is a memorandum opinion containing no reasoning or authorities, so it is unknown why the Supreme Court did not apply the Rule of Necessity in that

---

[15] Moreover, as a practical matter, "the circuit courts of appeal . . . are the courts of last resort in the run of ordinary cases." Textile Mills Sec. Corp. v. Comm'r of Internal Revenue, 314 U.S. 326, 335 (1941).

[16] The decision whether to invoke the Rule of Necessity properly rests with each of the active judges who are currently recused, rather than with the eight nondisqualified judges. Only they have the power to set aside their own recusals; we cannot order them to do so.

Each recused judge would need to address the debatable issue of exactly which judges should set aside their recusals. Perhaps they should all do so, because they each owe a duty to prevent this court from defaulting on its duty to decide this appeal which is properly within its jurisdiction. Or perhaps only those judges who have relatively small interests in the case, such as owning small amounts of stock which can easily be sold, should unrecuse themselves.

But, regardless of how this issue is resolved, it remains clear that "the absolute duty of judges to hear and decide cases within their jurisdiction," Will, 449 U.S. at 215, requires that at least some recused judges participate in the case if there is no other means of carrying out the court's duty to render a decision.

[17] In most cases, the Supreme Court has discretion as to whether to hear a case at all, so the Rule of Necessity does not come into play when the Court affirms a lower court's decision due to lack of a quorum. See, e.g., Am. Isuzu Motors, Inc. v. Ntsebeza, 128 S. Ct. 2424 (2008) (mem.). But the Chrysler case cannot be distinguished in this way because it came to the Supreme Court on direct appeal from a district court, rather than on a writ of certiorari.

case. But the dismissal of the case in Chrysler was plainly inconsistent with the Rule of Necessity as the Court subsequently explained it in Will: the recusals of four Justices meant the case could not be heard otherwise,[18] so under Will, the Rule ought to have overridden the recusals that deprived the Chrysler Court of a quorum. Thus, Chrysler and Will appear to be inconsistent. The question for this court, therefore, is which of the two we should follow. Chrysler is a bare memorandum opinion issued in 1941 by five Justices without a quorum, whereas Will is a fully reasoned, unanimous opinion joined by eight Justices and issued in 1980. The fact that Will is more recent than Chrysler should be enough to tell us what to do: when two Supreme Court precedents disagree, the more recent one obviously controls. If there were any remaining doubt about whether to follow Will or Chrysler, it should be erased by the fact that the Supreme Court's decision in Will rested on more than five hundred years of precedent, 449 U.S. at 213, whereas the Chrysler decision was supported by no explanation whatsoever.[19] Nonetheless, the majority ignores Will and follows Chrysler.

In summary, under Will, a judge is obligated to take part in the decision of a case, even if he or she has a personal interest in it, if the case cannot be heard otherwise. 449 U.S. at 213. This obligation overrides the federal statute on disqualification. Id. at 217. It arises from "the absolute duty of judges to hear and decide cases," id. at 215, and from the rule that federal courts cannot decline to exercise their jurisdiction, id. at 216 n.19. Therefore, if the en banc court lacks a quorum and if we can find no other way

---

[18] If the situation in Chrysler arose today, the Court could instead remit the case to a court of appeals as provided by 28 U.S.C. § 2109, but that statute had not yet been enacted in 1941.

[19] Additionally, two years after dismissing the appeal in Chrysler, the Supreme Court in North American Co. v. SEC, 320 U.S. 708 (1943) (mem.), followed a different approach which was consistent with the Rule of Necessity. See infra section B(4).

of carrying out our duty to decide this case, then as a last resort we must apply the Rule of Necessity rather than dismissing the appeal.

### 3. Inviting a Judge from Another Circuit

As Judge Davis has also observed, another way to fulfill our duty to decide this appeal would be to follow the procedure set out in 28 U.S.C. § 291: "The Chief Justice of the United States may, in the public interest, designate and assign temporarily any circuit judge to act as circuit judge in another circuit on request by the chief judge or circuit justice of such court." In accordance with § 291, Judge Jolly, the acting chief judge in this case, can request the designation and assignment of a judge from another circuit to give us a quorum.[20] He does not need the authorization or votes of any other judges in order to make that request, and he ought to do so: it would surely be "in the public interest," since it would enable this court to avoid defaulting on its duty to hear and decide this appeal.[21] Indeed, it is not uncommon for active circuit judges to sit by designation in other circuits, even without the kind of exigent circumstances that have arisen here. E.g., Fleming v. Yuma Reg'l Med. Ctr., 587 F.3d 938 (9th Cir. 2009) (Tymkovich, J., of the Tenth Circuit, sitting by designation); E.I. DuPont de Nemours & Co. v. United

---

[20] This court's previous decision not to use § 291 in United States v. Nixon, 827 F.2d 1019 (5th Cir. 1987) (per curiam), does not control here. In Nixon, after a three-judge panel had decided the appeal, the defendant-appellant sought rehearing en banc and was denied. There were not enough nondisqualified active circuit judges to make up an en banc quorum as defined under this circuit's old Rule 35.6. However, in that case, the court was not obligated to invite outside judges to make up an en banc quorum, because a litigant has no statutory or constitutional right to rehearing en banc. See id. at 1022. The difference between Nixon and this case is that here, the panel's decision has been vacated by the granting of rehearing en banc, so this court has not fulfilled its duty to decide the appeal.

[21] The Chief Justice might have denied the request and pointed out that we already have a quorum under 28 U.S.C. § 46(c)-(d), as discussed above. That, too, would have helped us to decide this case.

States, 508 F.3d 126 (3d Cir. 2007) (Michel, C.J., of the Federal Circuit, sitting by designation).

The idea that a judge of another circuit could take part in an en banc rehearing of this court may seem counterintuitive to some, but it is authorized by statute: "Such justice or judge shall have all the powers of a judge of the court, circuit, or district to which he is designated or assigned," subject to minor exceptions that are not relevant here. 28 U.S.C. § 296 (emphasis added). Moreover, that "judge shall discharge, during the period of his designation and assignment, all judicial duties for which he is designated and assigned" and "[h]e may be required to perform any duty which might be required of a judge of the . . . circuit to which he is designated and assigned." Id. Thus, a judge temporarily assigned to the Fifth Circuit becomes, for all intents and purposes, a full-fledged member of this court.[22]

For the acting chief judge to seek the designation and assignment of a judge to participate in the en banc rehearing of this case would certainly be an unusual step upon a rare occasion, but it is authorized by the relevant statutes. Moreover, such a step would be no more unusual than the situation that calls for it, in which the en banc court has (supposedly) lost its quorum after granting rehearing en banc and thereby vacating the panel opinion. We therefore ought to make use of § 291 in order to enable us to carry out our absolute duty to render a decision in this case.

---

[22] Furthermore, the same statute expressly allows a judge who is designated and assigned to another circuit to participate in the rehearing en banc of any matter that has come before him or her:

> A justice or judge who has sat by designation and assignment in another district or circuit may, notwithstanding his absence from such district or circuit or the expiration of the period of his designation and assignment, decide or join in the decision and final disposition of all matters submitted to him during such period and in the consideration and disposition of applications for rehearing or further proceedings in such matters.

28 U.S.C. § 296 (emphasis added).

21

4. Holding the Case Over Until We Have a Quorum

One more way in which we could fulfill our duty to decide this case would be to follow the example set by the Supreme Court in North American Co. v. SEC, 320 U.S. 708 (1943) (mem.). In that case, the Supreme Court, which was one Justice short of a quorum, decided to hold the case over until such time as it had a quorum. Eventually the Court obtained a quorum and was able to decide the case. 327 U.S. 686 (1946).

The circumstances of North American Co. were similar to those of this case in an important way. In 1943, the Supreme Court had reason to believe that Congress would soon amend the relevant statute in order to make it possible for the Court to obtain a quorum. See John P. Frank, Disqualification of Judges, 56 Yale L.J. 605, 626 & nn.82-84 (1947). (Ultimately Congress did not amend the statute, but Chief Justice Stone withdrew his recusal to allow the Court to decide the case. See id.) In the instant case, there is no indication that Congress will alter our quorum requirement, but there is an eight-month-old vacancy on this court. When the President and the Senate fill the vacancy, then nine out of seventeen active judges of this court — a majority — will be able to hear and decide this case (provided that the judge who is appointed is not disqualified). Thus, like the Supreme Court in North American Co., we have reason to believe that the political branches will soon give us a quorum, and we can wait for them to do so. It is unlikely that this court's current vacancy will continue for more than the two and a half years that the Supreme Court waited in North American Co.

The majority has chosen to follow the Supreme Court's example in Chrysler while ignoring the Court's more recent example in North American Co. This is the wrong choice because following North American Co. would

allow us to fulfill our absolute duty to decide this case, whereas dismissing the case contravenes that duty.

*        *        *

In closing, it is worth emphasizing once more that the majority's dismissal of this case is a decision to reject several legally valid courses of action, not a merely ministerial application of settled rules as the majority suggests.  It is therefore inconsistent with the majority's own rationale, which is predicated on the claim that we lack a quorum and therefore lack the power to take any action in this case.  Despite our supposed lack of power, the majority has made the decision not to recognize that we have a quorum under 28 U.S.C. § 46; not to follow the example of the Supreme Court in North American Co.; not to invite an outside judge under 28 U.S.C. § 291; and not to apply the Rule of Necessity under Will.  The majority has instead decided to dismiss a case over which we have jurisdiction, thereby violating the longstanding rule, dating back to Cohens v. Virginia, that we lack the power to decline to exercise the jurisdiction that has been conferred on us.  Because this court has an absolute duty to render a decision in this appeal, I respectfully dissent.